## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | ) | |
| JOSEPH M. HEDLEY and FRED A. | ) | |
| RAUCH, III, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11-CV-0348-NJR-DGW |
| | ) | |
| vs. | ) | |
| | ) | |
| ABHE & SVOBODA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

### Introduction

Pending before the Court is Defendant ABHE & Svoboda, Inc.'s Omnibus Motion to Dismiss Relators' First Amended Complaint (Doc. 33).   In the motion, Defendant ABHE & Svoboda, Inc. ("ASI") seeks to dismiss all remaining counts of the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(3), Federal Rule of Civil Procedure 12(b)(6), 28 U.S.C. § 1406(a), or in the alternative, to transfer this action to the District of Maryland pursuant to 28 U.S.C. § 1404(a) (Doc. 33). Plaintiffs-Relators Joseph M. Hedley and Fred A. Rauch, III ("Relators") have filed a response brief in opposition (Doc. 37).[1]   For the reasons set forth below, the request to

---

[1] The response brief (Doc. 37) was actually filed by the Government, who has since withdrawn its intervention from the case (*See* Docs. 50 & 52).   Relators adopt the Government's arguments set forth in

dismiss the case for lack of jurisdiction pursuant to Rule 12(b)(3) or § 1406(a) is denied. Relators' alternative request, however, to transfer the case pursuant to 28 U.S.C. § 1404(a), is granted.

### Factual & Procedural Background

Relator has brought *qui tam*[2] claims on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729(a)(1) (Count I) for presenting or causing to be presented false claims, § 3729(a)(2) (Count II) for using a false record or statement to get a false claim paid, § 3729(a)(3) (Count III) for conspiracy, and several common law claims, including fraud (Count IV), breach of contract (Count V), unjust enrichment (Count VI), and payment by mistake (Count VII) (*See* Doc. 19). The First Amended Complaint (Doc. 19) alleges that ASI violated the False Claims Act by submitting false claims and records and conspiring with others to defraud the Maryland State Highway Association of approximately $10,000,000.00.

The following facts are derived from Relators' First Amended Complaint, Gail Svoboda's affidavit in support of ASI's Motion to Dismiss, and the exhibits attached to Relators' response brief. *See, e.g., Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 809-810 (7th Cir. 2011) ("When ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside

---

the response brief.

[2] *Qui tam* is short for *qui tam pro domino rege quam pro se ipso in hac parte sequitur* ("Who brings the action for the King as well as for himself."). *United States ex rel. Eunice Matthews v. Bank of Farmington*, 166 F.3d 853, 857 (7th Cir. 1999).

the pleadings.") (*quoting Cont'l Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)); *see also Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901, 903-904 (N.D. Ill. 2013) (evidence submitted outside the pleadings may be considered to the extent that it sheds light on whether a court's venue is proper).   ASI is a company that offers industrial coatings services and construction services (Doc. 34-1, p. 1).   ASI is a Minnesota corporation with its principal place of business in Prior Lake, Minnesota (Doc. 34-1, p. 1).   ASI also maintains offices in California, Connecticut, Hawaii, and Michigan (*Id*.).

Relators assert that ASI made fraudulent representations in its bid proposal for Contract No. AA4565180 ("Contract"), a contract with the Maryland State Highway Administration ("MSHA") to clean and repaint the Pearl Harbor Memorial Bridge (popularly known as the Severn River Bridge) located in Anne Arundel County, Maryland (Doc. 19, p. 4-5).   The Contract was substantially funded by DOT (Doc. 19, p. 5).   According to the First Amended Complaint, ASI falsely represented that it would utilize at least fifteen percent of the federal government funds on goods or services supplied by a Disadvantaged Business Enterprise ("DBE"),[3] and based on this representation, the MSHA awarded ASI the Contract (Doc. 19, p. 5).   Relators allege that

---

[3] The First Amended Complaint alleges that, in 1983, Congress enacted the first DBE statutory provision, and the DOT has had in effect since that time a policy of helping small businesses owned and controlled by socially and economically disadvantaged individuals, including minorities and women, in participating in contracting opportunities created by DOT financial assistance programs (Doc. 19, p. 3). The DOT has established a regulatory framework that requires states to determine appropriate levels of DBE participation, and each recipient state must establish overall DBE participation goals for DOT-funded contracts (Doc. 19, p. 3-4).   When a DBE participates in a contract, only the value of work actually performed by the DBE can be counted towards an established participation goal (Doc. 19, p. 4).

ASI did <u>not</u> perform its obligation and instead conspired with Northeast Work and Safety Boats, LLC ("NWSB") to falsely represent NWSB's participation as a DBE in order to acquire the Contract (Doc. 19, p. 5-6).

Relators assert that, as part of the fraudulent scheme between ASI and NWSB, ASI entered into an agreement with Brighton Painting Company ("Brighton") to provide project management services under the Contract that were financed by ASI (Doc. 19, p. 5).   The work performed by Brighton, however, was falsely represented to MSHA as having been performed by NWSB so ASI would appear to meet its DBE requirements (*Id.*). To encourage NWSB to go along with the scheme, Relators allege that ASI gave NWSB eight percent of the payments that ASI received under the Contract from the Government (Doc. 19, p. 6).   In exchange, NWSB allowed ASI to utilize NWSB's name and certification so ASI could falsify that it was complying with the DBE utilization obligation under the Contract (*Id.*).

A payroll firm, ADP, was hired to provide payroll services for NWSB (*Id.*). Relators allege that, through ADP, false and inaccurate payroll records for supposed NWSB employees were created and made to appear such that they reflected compensation and benefits provided to NWSB employees for work that such employees performed under the Contract (*Id.*).   In reality, Brighton arranged to have laborers and painters put on NWSB's payroll (*Id.*).

Relators assert that employee payrolls were falsely submitted and falsely

represented as being certified on a weekly basis by NWSB, when they were actually prepared by Brighton employees, and the payroll funding was wire transferred by ASI to a NWSB account (*Id.*).    Relators assert that ASI submitted false quarterly DBE participation reports to MSHA and listed the DBE participation amounts paid to NWSB for certain periods to show its progress in meeting the required fifteen percent DBW goal (*Id.*).    Relators assert that ASI knowingly submitted Contractor's Progress Estimates to MSHA in order to receive progress payments for work completed under the Contract while operating its fraudulent scheme (*Id.*).

The Brighton office is located in South Roxana, Illinois, and its president is Joseph Hedley (Doc. 37-1, p. 1).    Joseph Hedley is one of the Relators in this case.    The president of ASI, Gail Svoboda, stated in her affidavit that ASI took Brighton on as the project manager of the bridge project due to Brighton's financial troubles at that time (Doc. 34-1, p. 4).    Svoboda also stated that "after face-to-face negotiations with Joseph M. Hedley (relator in this action) in Minnesota, [ASI] entered into a verbal contract with Brighton for project management services on or about June 15, 2006."    (*Id.*).    She further stated that she closed the deal with Brighton by phone from the State of Hawaii (*Id.*). ASI asserts that the bridge project was managed by a Brighton employee, Paul Marley, who lived in Maryland and managed the project on site (Doc. 34-1, p. 5).    Relators assert that a substantial amount of monthly union reports and payroll processing work that implemented the fraudulent scheme was performed by Brighton employees in its offices

located in South Roxana, Illinois (Doc. 19, p. 7).   All invoices for work completed under the Contract were submitted to the MSHA from ASI's headquarters in Prior Lake, Minnesota (*Id.*).   All payments on these invoices were made directly to ASI's headquarters and ultimately deposited into ASI's Wells Fargo bank account in Minnesota (*Id.*).   ASI alleges that it, in turn, made payments to subcontractors, such as NWSB and Brighton for work performed under the Contract (*Id.*).

ASI acquired property in South Roxana, Illinois, in 2008 through a property lien and subsequent default on a debt owed by Brighton (Doc. 34-1, p. 3-4).   The property is industrially zoned, and ASI does not actively use the property for business purposes (*Id.*).   ASI asserts that, on occasion, ASI has stored small amounts of equipment there (*Id.* at 4).   ASI pays taxes on the property there, but it pays no other taxes to the State of Illinois (*Id.*).

This action was originally filed in the Southern District of Illinois on April 25, 2011, and it was assigned to Chief Judge David R. Herndon (Doc. 1).   On April 18, 2013, the Government filed its Notice of Election to Intervene (Doc. 18).   On August 30, 2013, ASI moved to dismiss the First Amended Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or in the alternative to transfer the case to the District of Maryland, or in the alternative to dismiss the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 33). On September 3, 2013, the case was assigned a Track C with a presumptive trial month

of March 2015.   On October 2, 2013, the Government filed its response to ASI's Motion

to Dismiss (Doc. 37).   ASI then filed a reply brief, which was stricken by Chief Judge

Herndon for failing to comply with Local Rule 7.1 (*See* Doc. 44).   On December 31, 2013,

the Government filed a Motion to Withdraw Intervention (Doc. 50), which Chief Judge

Herndon granted on January 21, 2014 (Doc. 52).

On May 19, 2014, the case was reassigned to the undersigned District Judge.   The

Court held a hearing on the Motion to Dismiss on July 7, 2014.   At that hearing, the

Court dismissed Count VI (the unjust enrichment claim) of the First Amended

Complaint with prejudice and by agreement of the parties (*See* Doc. 62).

**Relevant Legal Standards**

**I.      Pleading Standards**

ASI premises its motion upon Federal Rules of Civil Procedure 12(b)(3), 12(b)(6),

28 U.S.C. § 1406(a), and 28 U.S.C. § 1404(a).

Rule 12(b)(3) provides that a party may move to dismiss an action when it is not

filed in the proper venue.   FED. R. CIV. P. 12(b)(3).   When a defendant moves to dismiss

for improper venue pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving

that venue is proper.   *See Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788

(N.D. Ill. 2001); 5B Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1352 (3d ed.);

*Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182 (7th Cir. 1969).   In evaluating a

motion to dismiss for improper venue, the Court must take the allegations in the

complaint as true unless they are contradicted by affidavits, construe facts and draw reasonable inferences in favor of the plaintiff, and resolve factual disputes in the plaintiff's favor.   *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011); *see also Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998).   As previously stated, the Court may examine facts outside of the complaint.   *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).   If venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."   28 U.S.C. § 1406(a).

In the alternative, ASI seeks transfer based on 28 U.S.C. § 1404(a).   "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404(a).   "Under § 1404(a), a court may transfer a case if the moving party shows that: (1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve in the convenience of the parties and the witnesses as well as the interests of justice."   *Bajer Design Mktg. v. Whitney Design, Inc.*, No. 09 C 1815, 2009 WL 1849813, at *1 (N.D. Ill. June 26, 2009).   Section 1404(a) does not indicate the relative weight to be accorded to each factor.   *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

In the alternative, ASI seeks dismissal of all claims based on Rule 12(b)(6).   In deciding a motion to dismiss for failure to state a claim on which relief can be granted

under Rule 12(b)(6), the district court's task is to determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).   The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly*, courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, ––– U.S. ––––, 130 S. Ct. 1141 (2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## II.   The False Claims Act Standard

Under the federal False Claims Act, "private individuals . . . referred to as 'relators,' may file civil actions known as qui tam actions on behalf of the United States to recover money that the government paid as a result of conduct forbidden under [the False Claims] Act."   *United States ex rel. Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011) (citations omitted).   "To establish civil liability under the False Claims Act ("FCA"), a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false."   *Yannacopoulos*, 652 F.3d at 822 (citing *United States ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)).

**Analysis**

**I.    Jurisdiction**

The federal questions posed by Relators' claims under the False Claims Act, 31 U.S.C. §§ 3729-3733 *et seq.*, and the express language of the FCA give this Court subject-matter jurisdiction.    *See* 28 U.S.C. § 1331 and § 1345; 28 U.S.C. § 3732(a).    ASI asserts that this Court, however, lacks personal jurisdiction over ASI.    In a federal question case such as this one, the Court must determine (1) whether the applicable statute confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction accords with due process requirements.    *United States ex rel. Finks v. Huda*, 205 F.R.D. 225, 228 (S.D. Ill. 2001) (citing *United States v. De Ortiz*, 910 F.2d 376, 382-83 (7th Cir. 1990)).    The FCA provides for nationwide service of process.[4]    *See* 31 U.S.C. § 3732(a).    A federal statute providing for nationwide service of process serves as a statutory basis for personal jurisdiction.    *See U.S. ex. Rel. Landsberg v. Levinson*, No. 03-CV-1429, 2006 WL 895044 (W.D. Penn. Mar. 29, 2006) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)); *see also Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir. 1984) ("Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with

---

[4] Section 3732(a) states:

> Any action arising under section 3730 may be brought in any judicial district in which the defendant, or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and *served at any place within or outside the United States.*

due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant.").

The exercise of personal jurisdiction is said to comport with due process where a non-resident defendant has at least minimum contacts with the forum so as not to offend "traditional notions of fair play and substantial justice." *International Shoe Co*. v *Washington*, 326 U.S. 310, 316 (1945).   Here, both parties base their arguments regarding personal jurisdiction on the idea that the relevant forum is Illinois, the state in which this federal district court sits.   Neither the Supreme Court nor the Seventh Circuit has addressed the issue of the relevant forum (the United States or the state in which the federal district court sits) on which to base a minimum contacts analysis under the False Claims Act.   Courts that have addressed this issue, however, have consistently found that, in FCA cases, only minimum contacts with the United States *as a whole* are required. *United States ex rel. Finks v. Huda*, 205 F.R.D. 225, 228 (S.D. Ill. 2001) (finding that defendant's contacts with the United States establish personal jurisdiction over the FCA claim); *U.S. ex rel. Tucker v. Christus Health*, Case No. 09-1819, 2012 WL 5351212, at *2 (S.D. Tex. Oct. 23, 2012) (same); *United States of America v. Gwinn*, No. 06-cv-00267, 2008 WL 867927, at *16 (S.D. W.V. Mar. 31, 2008) (same); *U.S. ex. Rel. Landsberg v. Levinson*, No. 03-CV-1429, 2006 WL 895044 (W.D. Penn. March 29, 2006) (same); *United States ex rel. Vallego v. Investronica, Inc.*, 2 F. Supp. 2d 330, 334 (W.D. N.Y. 1998) (same); *United States v. Metzinger*, No. CIV. A. 94-7520, 1996 WL 412811, at *2-3 (E.D. Penn. July 18, 1996) (same);

*United States v. St. Joseph's Regional Health Center*, 240 F. Supp. 2d at 886 n. 1 (same).   The reasoning behind this idea is the following: "since due process limitations are limitations on the power of the sovereign and not the convenience of defendants, no such limitations come into play where a federal statute authorizes nationwide service of process since all citizens within the territory of the sovereign are subject to the sovereign's power, 'whether the court sits in Indianapolis or Alexandria.'"   *Landsberg*, 2006 WL 895044, at *3 (citing *Finks*, 205 F.R.D. at 227).   Further, in the context of other federal statutes, the Seventh Circuit has concluded that a "national contacts" analysis is appropriate.   *See, e.g., United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) (admiralty law); *Lisak v. Mercantile Bancorp., Inc.* 834 F.2d 668, 671-72 (7th Cir. 1987) (RICO).   The Court finds this reasoning persuasive.

Here, it is undisputed between parties that ASI is a citizen of Minnesota, within the United States.   Thus, for purposes of Relators' FCA claim, this Court has personal jurisdiction over ASI.   Additionally, this Court has supplemental jurisdiction over the claims asserted under state common law pursuant to 28 U.S.C. § 1367, as they are so related to the claims within the Court's federal question jurisdiction that they form part of the same case or controversy.   *See* 31 U.S.C. § 3732(b) (granting jurisdiction to district courts "over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730").   "The same logic that lies behind

supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. §

1367, supports the application of supplemental personal jurisdiction over claims that are

properly before the court under § 1367." *See Robinson Engineering Co. Pension Plan and*

*Trust v. George*, 223 F.3d 445, 450 (7th Cir. 2000).   Accordingly, the Court finds that it has

jurisdiction over this lawsuit.

### II.     Motion to Dismiss Under 12(b)(3)

ASI argues that this Court should dismiss Relators' First Amended Complaint

under 12(b)(3) because Relators fail to provide a proper basis for venue in the Southern

District of Illinois under 28 U.S.C. § 1391.

28 U.S.C. § 1391(b) provides:

A civil action may be brought in:

> (1) A judicial district in which any defendant resides, if all defendants are
> residents of the State in which the district is located;
>
> (2) A judicial district in which a <u>substantial part</u> of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is
> the subject of the action is situated; or
>
> (3) If there is no district in which an action may otherwise be brought as
> provided in this section, any judicial district in which any defendant is
> subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (emphasis added).

For venue to be proper in the Southern District of Illinois under section 1391(b)(2),

a substantial part of events or omissions giving rise to the claim must have occurred in

the Southern District of Illinois.   The events or omissions must have more than "some

tangential connection" to the chosen venue.   *Mercantile Capital Partners v. AgenziaSports, Inc.*, 04 C 5571, 2005 WL 351926, at * 4 (N.D. Ill. Sept. 5, 2011) (quoting *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998)).   A plaintiff need only demonstrate that a "substantial part" of the events or omissions giving rise to the claim occurred within the district, not that a majority of the events took place there.   *Schwarz v. National Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004).   "To be 'substantial,' the events that occurred in the forum district must be a part of the historical predicate of the claim.   *Id.*; *see also Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 965 (N.D. Ill. 2008).   When "many of the events giving rise to [the] claims occurred in the Southern District [the] events are a historical predicate to the claim, and thus they are a substantial part of the events giving rise to the claim."   *Chaklos v. Stevens*, No. 06-4063 JPG, 2006 WL 2247309, at *2 (S.D. Ill. Aug. 4, 2006).   The court must look to the entire sequence of events underlying the claim, rather than a single action which may have triggered the claim.   *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wisc. 2006) (citing *Uffner v. LaReunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001)).

The fraud alleged by Relators in the First Amended Complaint is multi-faceted. Specifically, Relators allege that ASI entered into an agreement with Brighton to provide project management services under the Contract, but the work performed by Brighton was falsely represented to MSHA as having been performed by NWSB.   Thus, ASI fraudulently represented to MSHA that it was meeting its DBE utilization obligation

under the Contract, when it in fact was not.   One of the key facts to this allegedly fraudulent scheme was that Brighton was the party doing the work, but the claims were presented in a way showing that NWSB was the party doing the work.

Brighton is a painting company that resides in Illinois.   Specifically, the Brighton office is located in South Roxana, Illinois, which is within the Southern District of Illinois (Doc. 34-1, p. 4).   The work on the Severn River Bridge, however, was performed in the state of Maryland.   ASI, whose corporate headquarters is in Minnesota, negotiated with Brighton to have Brighton carry out the work on this bridge.   According to Gail Svoboda (the president of ASI), these initial negotiations were in person between her and Joseph Hedley (president of Brighton) and occurred within the state of Minnesota (Doc. 34-1, p. 4).   The oral contract for Brighton to perform the work was executed over the phone between Svoboda and Hedley while Svoboda was in the state of Hawaii (Doc. 34-1, p. 4).   It is unclear where Hedley was when this conversation took place. Presumably, Hedley would have been in Illinois during this phone conversation, as that is where the Brighton office is located.   Hedley, however, resides in Missouri, so it is possible that Hedley could have been in Missouri when this conversation took place as well.

In the First Amended Complaint, Relators assert that "[a] substantial amount of monthly union reports and payroll processing work that implemented the fraudulent scheme was performed by Brighton employees in its office in South Roxana, Illinois."

(Doc. 19, p. 7).   Relators have also provided documentation of various e-mails sent between Svoboda and Hedley regarding their arrangement involving the Severn River Bridge (Doc. 37-1, p. 1-13).

It is apparent that an arrangement between Brighton, ASI, and NWSB was negotiated and discussed in correspondence that, for the most part, took place over the phone and via e-mail between Joe Hedley in Illinois and Gail Svoboda in Minnesota and Hawaii.   It is this arrangement that Relators assert give rise to their false claims. Relators assert that these e-mails establish the underlying fraudulent representation of NWSB as a participant in the Contract (*See* Doc. 37, p. 4).   Without opining on whether this is true, the Court finds that there was significant communication with Brighton, located within the Southern District of Illinois, and these communications with Brighton are sufficiently relevant to the overall alleged fraudulent scheme.   *See Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) ("even when the defendant never personally enters the forum district, venue can nonetheless be appropriate in that district . . . [because t]elephone conversations and correspondence can support venue under section 1391(b)(2) depending on the nature of the contacts and their relationship to the claim"); *see also Consol. Ins. Co. v. Vanderwoude*, 876 F. Supp. 198, 200-01 (N.D. Ind. 1995) (the requirements of section 1391(a)(2) "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.").   In turn,

the Court finds that the continuous contact with the Brighton office in Illinois is a substantial part of the events giving rise to Relators' claims.   These interactions in Illinois were not merely incidental to the alleged wrongful acts.   Had ASI not entered into an oral contract with Brighton, the sequence of events culminating in Relators' First Amended Complaint would not have taken place.   Given Brighton's involvement in this alleged scheme, a substantial part of the events or omissions giving rise to Relators' claims against ASI occurred in this district, and venue is proper.

Further, venue is proper under the FCA's venue statute.   Title 31 U.S.C. § 3732(a) provides:

> Any action under section 3730 may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred.

31 U.S.C. § 3732(a).   Section 3732(a) prohibits "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval."   31 U.S.C. § 3729(a)(1)(A).   Section 3732(b) prohibits "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).   Section 3729(a)(1)(C) prohibits "conspir[ing] to commit a violation" of the above mentioned conduct.   Because the alleged conspiracy to commit these violations (via telephone and e-mail) and the alleged fine-tuning of this arrangement that led to submitting a false claim involved communications with a party in the Southern District of Illinois, venue is proper in the Southern District of Illinois

based on 31 U.S.C. § 3732(a), and dismissal is not warranted.

### III.    Motion to Transfer Venue Under 28 U.S.C. § 1406(a)

ASI alternatively argues that this Court should transfer the case to the District of Maryland pursuant to 28 U.S.C § 1406.   28 U.S.C. § 1406(a) "provides that, if venue is improper, the Court has the option to dismiss or transfer the suit to a district in which the plaintiff could have filed it initially."   *Brunswick Corporation v. Thorsell*, 13 C 9222, 2014 WL 1612668, at *4 (N.D. Ill. Apr. 21, 2014) (citing *Allstate Ins. Co. v. Regions Bank*, 13 C 5140, 2014 WL 440253 (N.D. Ill. Feb. 4, 2014)).

As the Court has established in Part II, a substantial portion of the events that give rise to Relators' claims took place in the Southern District of Illinois.   Thus, because venue is proper here, ASI's alternative request to transfer venue is denied.

### IV.    Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

ASI alternatively asks the Court to transfer this action to the District of Maryland pursuant to 28 U.S.C. § 1404(a).   The decision whether or not to transfer the case to another judicial district pursuant to 28 U.S.C. § 1404(a) is within the Court's broad discretion.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *see also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (1986) ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge.").   To determine whether the

transfer will serve the convenience of the parties and the interests of justice, the court must make an "individualized, case-by-case" determination.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation marks and citation omitted).

As set forth above, three conditions must be fulfilled before a case may be transferred under 28 U.S.C. § 1404(a).  Venue must be appropriate in the transferor court, venue must be appropriate in the transferee court, and the transfer must be for the convenience of the parties and witnesses and in the interest of justice.  *Research Automation Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  The Court has already explained its basis for finding venue to be proper in the Southern District of Illinois (the transferor court).  Further, venue is also proper in the District of Maryland (the transferee court) because a substantial part of the events giving rise to the claims in this action also occurred there, i.e. the cleaning and painting of the bridge and the allegedly fraudulent submissions, which were made to MSHA.  *See Schwarz*, 317 F. Supp. 2d at 834 (a plaintiff need only show that a *substantial part* of the events giving rise to the claim occurred there, not that a *majority* of the events took place there) (emphasis added).  These events were also a historical predicate to the claim.  Thus, the Court next looks to whether the proposed transfer is for the convenience of the parties and witnesses and in the interest of justice.

The moving party has the clear burden of "establishing . . . that the transferee forum is clearly more convenient."  *Coffey*, 796 F.2d at 219.  ASI argues that the District

of Maryland is clearly more convenient because: (1) the majority of proof relevant to this case resides with the Severn River project managers and MSHA administrators in Maryland, (2) all the material events occurred in Maryland and the majority of non-party witnesses are located there, (3) Relators' choice of forum is entitled to less deference under these factual circumstances, and (4) transfer to the District of Maryland would be in the interest of justice.   Relators make no argument in response to ASI's request to transfer venue pursuant to 1404(a).

In making a determination, the Court must consider various private interests, including: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.   *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *3 (citing *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006)).   The Court should also consider public interest factors such as the interest of justice, including: the court's familiarity with the applicable law, the speed at which the case will proceed to trial and the desirability of resolving controversies in their local.   *Id.* at *6.   The burden is on the moving party to demonstrate that the transferee forum is clearly more convenient.   *Coffey*, 796 F.2d at 219-20.

## A.  Private Interest Factors

First, Relators have chosen this district as their forum.   Although not dispositive,

Relators' choice of forum must be given some weight.   In this instance, however, the weight accorded to Relators' choice of forum is reduced by the fact that neither of the Relators actually resides in Illinois (*See* Doc. 19, p. 2).   *See Tsaparikos v. Ford Motor Co.*, No. 02 C 6899, 2002 WL 31844949, at *2 (N.D. Ill. Dec. 18, 2002) ("where the plaintiff's choice is not the plaintiff's resident forum, the forum is entitled to less deference."). Further, Relators in the instant case are asserting the rights of the real party in interest, the United States Government, pursuant to the *qui tam* provision of the False Claims Act. As such, Relators' choice of forum is entitled to even less deference.   *See Simonian v. Monster Cable Products, Inc.*, 821 F. Supp. 2d 996, 998 (N.D. Ill. Nov. 22, 2010) ("the plaintiff in a *qui tam* action is actually the federal government, not [relator]. Therefore, contrary to [relator's] suggestion otherwise, his choice of venue is not entitled to substantial deference.").

Second, the situs of most of the material events is in Maryland.   Although the alleged scheme was set up and carried out through communications that occurred between several parties, one of which has an office in Illinois, the core of the fraudulent scheme is located in Maryland.   The Severn River bridge is physically located in Maryland and, obviously, the cleaning and painting of the bridge was performed in Maryland.   The Brighton employee, Paul Marley, who managed the Severn River Bridge project, lived in Maryland and managed the project on site (Doc. 34-1, p. 5).   The ASI employee, Gary Smith, who handled the paperwork associated with the day-to-day

operations of the Severn River Bridge project is "believed" to be a resident of Maryland (*Id.*). Significantly, the allegedly fraudulent submissions were submitted to MSHA. Thus, the locus of operative facts favors a transfer to the District of Maryland where the bulk of the operative facts occurred; the Southern District of Illinois has a much weaker connection to the facts of this litigation.

Third, ASI asserts that the majority of proof relevant to this case resides with the Severn River project managers and the MSHA administrators in Maryland. Relators have not contended otherwise. The Seventh Circuit has recognized that technological advancements have all but eliminated the importance of the location of documents and other sources of proof in § 1404(a) transfer analysis. *Bd. of Trs., Sheet Metal Workers Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000) ("Easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas."). Although the Court presumes that in this era of photocopying, computers, and Fed Ex/UPS the documents can be relocated to the Southern District of Illinois without undue expense, the fact that the majority of proof is in Maryland weighs slightly in favor of transfer. *See, e.g. Body Science LLC v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 995 (N.D. Ill. 2012) ("Even though the Court recognizes that documents today are easily transmitted, this factor weighs slightly in favor of transfer as to all Defendants.").

Fourth, the convenience of the parties favors neither party.   Relators both reside in Missouri (Doc. 19, p. 2).   ASI maintains its headquarters in Minnesota and has other offices in California, Connecticut, Hawaii, and Michigan (Doc. 34-1, p. 1).   Thus, none of the parties to this action resides in either the Southern District of Illinois or the District of Maryland.   Although Relators reside in Missouri, the neighboring state of Illinois, ASI maintains an office in Connecticut, which is close to the state of Maryland.   Transfer is not appropriate where it would merely shift inconvenience from one party to another. *Graham v. United Parcel Service*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007).   Thus, this factor is neutral.

The fifth factor, convenience of the witnesses, is generally viewed as the most important factor when considering a transfer of venue.   *Addition & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, 11 C 7992, 2012 WL 4850188 (N.D. Ill. Oct. 11, 2012) ("The convenience of the witnesses is often considered the most important factor in the transfer analysis and this case is no different."); *Key Electronics, Inc. v. Earth Walk Commc'ns, Inc.*, 4:13-CV-00098-SEB, 2014 WL 2711838 (S.D. Ind. June 16, 2014) ("courts often conclude that convenience to the witnesses is the most significant of the three factors under section 1404(a)"); *Forcillo v. LeMond Fitness, Inc.*, 220 F.R.D. 550, 553 (S.D. Ill. 2004) ("The next consideration is the convenience of the witnesses which is the most important factor in the transfer balance").   The Court may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses.   *See Heller Fin., Inc.*, 883

F.2d at 1293.   When evaluating the availability and convenience of witnesses, the Court

should consider not only the quantity of witnesses in each forum but also the nature and

relevance of their testimony.   *United States ex rel. Bukh v. Guldmann, Inc.*, No. 11 C 3701,

2014 WL 1647148, at *4 (N.D. Ill. Apr. 24, 2014).

ASI argues that the majority of non-party witnesses are located in Maryland (Doc.

34, p. 20).   In support, ASI attaches a sworn affidavit of Gail Svoboda stating that a

substantial number of witnesses with knowledge of the facts related to the Severn River

bridge project are believed to reside or can be found in or near the State of Maryland,

including Gary Smith, Diane and Ernie Harwood, NWSB personnel, and approximately

25-30 employees who worked on-site at the Severn River Bridge project location, and

presumably the MSHA employees who administered the Contract (Doc. 34-1, p. 5-6).

Relators have offered nothing in response to ASI's laundry list of possible witnesses.

Because almost all potential non-party witnesses reside in or are located closer to the

transferee forum, and Relators fail to identify any witnesses located closer to the

transferor forum, this factor weighs in favor of transfer.   *See Midwest Precision Services,*

*Inc. v. PTM Industries Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) ("In ruling upon a

motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed

facts presented to the Court by affidavit, deposition, stipulation or other relevant

documents.").

B.  Public Interest Factors

Shifting to the public interest factors, there is no substantial difference in the efficiencies of the two courts. According to the latest Federal Court Management Statistics prepared by the Administrative Office of the United States Courts, for the 12-month period ending March 31, 2014, civil litigants in the Southern District of Illinois could expect to go to trial in 28.1 months, whereas in the District of Maryland, the median time from filing to trial in civil cases was 33.7 months. *See* www.uscourts.gov (Judicial Caseload Profile Report-2014). However, the Southern District of Illinois has a median time from filing to disposition of 18.7 months, whereas in the District of Maryland, 7.6 months elapses from filing to disposition. *Id.* While the parties may receive an earlier trial date in the Southern District of Illinois, they are more likely to receive a quicker resolution of their claims in the District of Maryland. Thus, this factor is neutral.

With respect to knowledge of the particular law, as to the three False Claims Act claims, the substantive law to be applied is federal law, which is uniformly applicable in both the transferor and transferee jurisdictions. *See Cent. States, Se. & Sw. Areas Pension Fund v. Ehlers Dist., Inc.*, No. 11-C-2691, 2012 WL 581246, at *4 (N.D. Ill. Feb. 22, 2012) ("The second factor, familiarity with relevant law, also is a wash. The ERISA and MPAA principles at issue in this case are federal, leaving both courts fully capable of resolving the legal issues presented by the Fund's suit."); *see also Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126 (7th Cir. 1993) (explaining "a transferee court normally should use its

own best judgment about the meaning of federal law when evaluating a federal claim"). As to the remaining three common law claims (Counts IV, V, and VII), however, the law of the *transferor* district continues to apply to an action following its transfer under § 1404(a).   *See Coffey*, 796 F.2d at 221.   Obviously, the Southern District of Illinois is more familiar with Illinois law, which governs three out of the six remaining counts in the FAC, than the District of Maryland.   Accordingly, this factor weighs against transfer.

As for the "public interest, the court must evaluate the citizenship of the parties injured by the alleged misconduct, *see Countryman v. Stein, Roe & Farnham*, 681 F. Supp. 479, 485 (N.D. Ill. 1987), and the administration of justice is better served when "the action is litigated in the forum that is 'closer to the action.'"   *See Carillo v. Darden*, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998) (quoting *Paul v. Lands End, Inc.*, 742 F.Supp. 512, 514 (N.D. Ill. 1990)).   Obviously, the Government suffered injury by this alleged misconduct, but this is not helpful to the Court's 1404(a) convenience or interest of justice analysis.   Maryland clearly has an interest in that the Maryland State Highway Administration also suffered injury by the alleged misconduct.   Further, most of the "action" took place in Maryland.   Thus, Maryland's stronger relationship to the controversy and greater interest in resolving it favors transfer.

The Court is aware that this case has been in this district for over three years. Notwithstanding this time lag, however, the lawsuit is still only in the preliminary

stages of litigation (as evidenced by the present motion to dismiss) due to administrative changes within this district (one district judge retired, one district judge took senior status, one district judge took inactive status, and two new district judges joined this Court), as well as the nature of a *qui tam* action (the docket shows that the case became unsealed on May 30, 2013).   This Court has not expended any significant judicial resources on it thus far, other than determining the outcome of this motion.   Further, the facts now before the Court render it probable that little delay would result from transfer of this case to the District of Maryland.

Relators have not convinced the Court that the convenience of the parties and witnesses involved would be best served by keeping this action in the Southern District of Illinois.   ASI, however, has satisfied its burden of demonstrating that Maryland is a more convenient venue in which to continue this litigation.   Given the reasons above, this Court finds that Maryland has a stronger claim on the events at issue.   Overall, the Court concludes in its discretion that the convenience of the witnesses and the interest of justice would be best served by transferring this case to the District of Maryland.

## Conclusion

For the reasons set forth above, this Court **GRANTS in part** and **DENIES in part** ASI's Omnibus Motion to Dismiss Relators' First Amended Complaint (Doc. 33). Specifically, the motion is **DENIED** to the extent that it seeks dismissal for improper venue pursuant to Rule 12(b)(3) and dismissal or transfer pursuant to § 1406(a).   The

motion is **GRANTED** to the extent that it seeks transfer to the District of Maryland pursuant to § 1404(a).   The Court orders the Clerk of Court to **TRANSFER** this case to the District of Maryland.

Finally, the Court declines to decide ASI's motion to dismiss for failure to state a claim pursuant to 12(b)(6), and it is **DENIED** without prejudice to refiling it in the District of Maryland.

**IT IS SO ORDERED.**

**DATED:   September 16, 2014**

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**