THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JOSEPH M. HEDLEY<br>and FRED A. RAUCH, III,<br><br>    Plaintiffs,<br><br>VS.<br><br>ABHE & SVOBODA, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil No. 1:14-cv-02935-GLR<br>)<br>)<br>)<br>)<br>) |

**RELATORS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
<u>RENEWED MOTION TO DISMISS</u>**

**<u>Introduction</u>**

Defendant Abhe & Svoboda, Inc. ("ASI") has filed what it describes as a "renewed" Motion to Dismiss ("Motion"). However, the Motion in fact includes new challenges to Counts I-III of the First Amended Complaint ("FAC"); ASI's initial Motion to Dismiss made no challenge whatsoever to Counts I-III. Doc 34. Defendant now asserts that Counts I-III should be dismissed under Rule 12(b)(6).

Defendant's recitation of the facts and procedural background are largely accurate; however, Defendant states that Relators have pursued this action "despite" the Government's withdrawal. Doc 77, p 3. Courts have noted that the mere fact that the government chose not to intervene in no way demonstrates that it did not consider an FCA defendant's statements to be false, or that it "received exactly what it paid for." *Laymon v. Bombardier Transp. USA, Inc.*, 2009 U.S. Dist. LEXIS 24403, 45-46 (W.D. Pa. Mar. 23, 2009), citing *United States ex rel. King v. F.E. Moran, Inc.*, Civ. A. No. 00-c-3877, 2002 U.S. Dist. LEXIS 16277, at *31-32 (N.D. Ill.

Aug. 29, 2002).  If it did, the statutory provision permitting relators to pursue this type of action would be superfluous.  Id.

## Argument

I. **Counts I-III are Sufficient to Demonstrate a Right to Relief**

"The phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly".  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. S.C. 1999).  The False Claims Act is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.  The Court has consistently refused to accept a rigid, restrictive reading …." *United States v. Neifert-White Co.*, 390 U.S. 228, 232, 19 L. Ed. 2d 1061, 88 S. Ct. 959 (1968) (citation and footnotes omitted).

The False Claims Act reaches beyond "claims" which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." Id. at 233.  Thus, any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach. The test for False Claims Act liability is (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a "claim").  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d at 788. The FAC clearly meets this test.

### A. The First Amended Complaint Complies with Rule 9(b)

To the extent Rule 9(b) applies to the FAC, the FAC properly alleges the "who, what, when, where and how" of Defendant's fraudulent actions.  As Defendant admits in a footnote, in addition to substantial, detailed allegations made within the FAC, the FAC in fact attaches and

includes over 100 pages of documents falsely submitted to the government, on which the names, dates, and amounts underlying the fraudulent conduct are set out.

In general, the weakness of ASI's contention that the FAC fails to satisfy Rule 9(b) is demonstrated by the following:

The FAC asserts that ASI submitted a proposal that it intended to meet MSHA's 15% DBE requirement by using Northeast Work and Safety Boats, LLC ("NWSB") to perform $1,569,200.00 worth of the work on the bridge (¶19); that On July 21, 2006 the $10,381,640.00 total contract was awarded based on that representation (¶20); that the contract required that 15% of the work be done by a DBE (¶21); that ASI did not comply with this DBE utilization obligation but, instead, conspired with NWSB, a certified minority business, to falsely represent NWSB's participation in the project (¶22) and, to have the project management services NWSB was to perform, done by Brighton but reported to MSHA as having been performed by NWSB (¶23). Further the FAC alleges that ASI and NWSB intentionally and repeatedly misrepresented to MSHA that NWSB had the resources, ability, financing, bonding, workman's compensation insurance, equipment, personnel and an owner with the supervisory capability to direct the operations of NWSB in performing all of the obligations of its subcontract. (FAC ¶24). Further, it is alleged that ASI and NWSB agreed that NWSB would receive 8% of the payments ASI received from the Government notwithstanding the fact that NWSB would perform no commercially useful function but instead, would allow ASI to utilize NWSB's name and certification to perpetrate the falsehood that NWSB was actually performing commercially useful work on the contract. (FAC ¶25).

Finally, the FAC sets out specifics of how the fraud and artifice by ASI was accomplished.

Automatic Data Processing ("ADP") was providing payroll services that falsely reflected that laborers and painters who actually worked for Brighton (Relators' company) were NWSB employees who were being compensated by NWSB.  In fact NWSB had no such employees engaged on this job (FAC ¶26).  These employee payrolls were false and yet were submitted and certified on a weekly basis by NWSB, but were actually prepared by Brighton and funded by wire transfers from ASI to NWSB on a weekly basis (FAC ¶27).

Moreover, the FAC asserts that ASI negotiated or arranged for the purchase of materials and supplies and issued purchase orders for materials and goods to third party suppliers which indicated that NWSB was to be invoiced for these goods.  ASI would, however, provide NWSB with the funds to pay those invoices <u>plus</u> 8% for NWSB  (FAC ¶28).

The FAC also alleges that monthly union reports and payroll processing to implement the scheme, were prepared by Brighton employees (FAC ¶30), and that false quarterly DBE participation reports which listed alleged DBE participation amounts allegedly paid to NWSB for periods of September 2006 through December 2006; January 2007 through March 2007; April 2007 through June 2007; July 2007 through September 2007 and January 2008 through March 2008 were filed by ASI with MSHA to falsely demonstrate its progress in meeting the required 15% DBE goal.

1. **Relators Allege that ASI Submitted False Claims and Records**

Defendant performs gymnastics to support the Motion's assertion that the FAC is deficient with regard to allegations of ASI's submission of false claims to the Government.  It is undeniable that the FAC alleges and fully describes a scheme whereby false and inaccurate payroll records, union reports, progress estimates, and DBE participation reports were created at the direction of ASI and submitted to the Government in order to obtain payment from the

Government under the artifice that ASI was complying with the Contract's DBE requirement. See Doc 19, ¶¶ 23-31.

The Motion baselessly asserts that the FAC does "not plead that these allegedly false documents were 'claims' under the Contract". Doc 77, p 8. The FAC makes the straightforward declaration that, "every claim of DBE participation or request for payment submitted to MSHA by ASI under the Contract constituted a false claim…" Doc. 19, ¶ 34. The FAC sufficiently alleges the submission of false claims to the Government by ASI.

2. **Relators Allege the Necessary Scienter**

Defendant objects that liability under the FCA requires acts to have been performed "knowingly" yet they simultaneously acknowledge that the FAC in fact alleges that the acts were performed "knowingly". The FAC contains allegations that the false claims made the subject of the lawsuit were submitted "knowingly" (¶ 31), while ASI was "specifically aware of the falsity" of the claims (¶ 33) and that ASI "knowingly conspired" to do so (¶ 42).

Defendant attempts to discount these allegations as "mere conclusions", yet Defendant further admits that knowledge may be pled generally. Defendant's objection therefore appears baseless. Doc 77, p 9. Regardless, taken as a whole, it is clear that the FAC alleges the necessary scienter: the FAC sets out in detail the actions taken by ASI in carrying out its fraudulent scheme to defraud the Government by colluding with Northwest Work and Safety Boats (¶ 25), creating false payroll records (¶ 26), creating false invoice paper trails (¶ 28) and ultimately submitting false DBE reports (¶ 30). Relators' allegations that ASI's acts were performed "knowingly" do not exist in a vacuum and are clearly not "mere conclusions".

### 3. Relators Sufficiently Allege the Materiality of the False Claims

Under the FCA, a statement or claim is material "if it has a natural tendency to influence agency action or is capable of" influencing the government's funding decision. *United States ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008) (quoting *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1460 (4th Cir. 1997)).

The FAC clearly contains allegations of the materiality of the false claims. The FAC alleges that the claims were submitted "in order to receive progress payments". Doc 19, ¶ 31. The FAC further alleges that "the DOT paid the false or fraudulent claims because of the acts of ASI". Doc 19, ¶¶ 35, 39, 43. These allegations clearly establish that the false claims had a tendency to, and in fact did, influence the DOT to pay the claims.

### 4. Relators State a Plausible Claim Under the FCA

Defendant argues that the FAC does not state a plausible claim because it is "devoid of particularized allegations demonstrating that payment under the Contract was conditioned on ASI certifying compliance with a contract provision, statute or regulation". Doc 77, p 14.

As described above, the FAC alleges in detail the fraudulent scheme giving rise to ASI's liability. In addition, the FAC alleges specifically that ASI "used a false certification with regard to the Contract obligation to spend at least 15% of the federal government funds on goods or services supplied by either an MBE or a WBE to get false or fraudulent claims approved and paid by the United States". Doc 19, ¶ 38. Defendant's objection to the plausibility of the FAC is without merit.

**II. The Government has Suffered, and Can Demonstrate Damages**

The Government is entitled to damages even though the work on the Bridge was completed. The completed project does not demonstrate a lack of damages and does not entitle ASI to the federal funds given under the Contract.

Citing to *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908 (4th Cir. S.C. 2003), Defendant incorrectly argues that a showing of actual damages is required. See Doc 77, p 6. In *Harrison*, the conduct underlying the FCA claim was related to a failure to disclose a potential conflict of interest during the bidding process, and damages were premised on the effect that conflict may have had upon the amount of the ultimate bid. There were no allegations, however, to demonstrate that the conflict had such an effect. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d at 911-912. The *Harrison* Court found, "there was no evidence adduced at trial suggesting that GPC failed to perform the work that it was required to perform under the subcontract or that the government did not receive the benefit of the work performed. Harrison presented no evidence that the government did not get what it paid for…" *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 923 (4th Cir. S.C. 2003). Notably, even with no actual damages, the defendant in *Harrison* was still liable for a penalty. Id., at 913.

Here, the Government *did not* get what it paid for – as plead in the FAC, the Government paid to have a certain percentage of the work performed by a DBE in order "to help correct lingering discrimination and its effects". See Doc 19, p 3. By circumventing the DBE requirements, Defendant deprived the Government of one of the objectives of the Contract. Simply painting the Severn River Bridge was not what the Government was paying for.

Moreover, under the False Claims Act, damages are not a necessary element for a successful claim. *Rex Trailer Co. v. United States*, 350 U. S. 148, 152-53, 76 S. Ct. 219, 100 L. Ed. 149 (1956); *United States v. Miller*, 645 F.2d 473 (5th Cir. 1981). "Recovery under the [FCA] is not dependent upon the government's sustaining monetary damages." *Hutchins*, 253 F.3d at 183 (citation omitted). Therefore, there may be FCA liability even where the government suffered no monetary injury. See *United States ex rel. Sanders v. American-Amicable Life Ins. Co.*, 545 F.3d 256, 159 (3d Cir. 2008) (holding same but finding the FCA inapplicable because no claim was made to the government).

Here, however, the Government has suffered an injury under the facts pled in the FAC, in that the Government's DBE program, and the policies behind it, have been thwarted by ASI. As a result, courts have held that the Government was harmed where it made payments to a contractor even though its DBE program was being undermined by false representations of compliance with DBE regulations. See *Laymon v. Bombardier Transp. (Holdings) USA, Inc.*, 2009 U.S. Dist. LEXIS 24403, 46-47 (W.D. Pa. Mar. 23, 2009); *United States ex rel. King v. F.E. Moran, Inc.*, 2002 U.S. Dist. LEXIS 16277 (N.D. Ill. Aug. 22, 2002).

The Seventh Circuit has said that "[w]hen the conditions [for a government subsidy] are not satisfied, nothing is due . . . [so] the entire amount that [the defendant] received [from the subsidy] must be paid back." *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008). Therefore, in an FCA case, the defendant may not "keep the money obtained from the Treasury by false pretense, or avoid the penalty for deceit." *Id.* Similarly, in a Trade Agreements Act case, the Southern District of Illinois has held that the defendant was "not entitled to keep money obtained from the government under false pretenses." *United States v. CDW Government, Inc.*, No. 3:05-cv-00033-DRH-PMF (S.D. Ill., Jul. 3, 2012).

Moreover, from a policy standpoint, it would be unjust for a company to be permitted to keep the money received from the Government when it violated material contract terms. The entire purpose of a DBE requirement would be nullified if a company was allowed to obtain cheaper labor from a different subcontractor and fraudulently misrepresent the work as having been done by a DBE. It is immaterial to this point that the underlying work was completed because the DBE requirement was ignored.

As a result, ASI should not be allowed to keep the money obtained from the Government for its use in the Bridge project when the money was obtained because ASI made fraudulent representations in its bid proposal for the Contract.

### III.  The Remaining Common Law Claims (Counts IV, V and VII) State Claims Upon Which Relief Can Be Granted

Relators agree with Judge Rosenstengel and Defendant that Illinois law applies to the common law claims of the First Amended Complaint. However, the law does not require the dismissal of Counts IV, V and VII.

### A.  Count IV (Common Law Fraud) States a Claim for Relief.

ASI argues that the common law fraud claim fails to establish the essential element of damages because the Government did not allege any out-of-pocket losses from the Bridge project. However, damages are established because ASI obtained the money by virtue of fraudulent representations in its bid proposals for the Contract and the subsequent submissions by its subcontractors. See *supra* Section II. One reason ASI was awarded the Contract is that it falsely represented that it would utilize at least fifteen percent (15%) of the federal government

funds on goods or services supplied by a DBE. As plead here, that did not happen, as the minority participation was a sham.

**B.      Count V (Breach of Contract) States a Claim for Relief.**

ASI argues that that the common law breach of contract claim fails to establish the essential element of damages because the Government did not allege any out of pocket losses from the Bridge project. However, damages can be established because ASI obtained the money when it made fraudulent representations in its bid proposals for the Contract. See supra Section II.  As stated in Section II, one reason ASI was awarded the Contract is that it falsely represented that it would utilize at least fifteen percent (15%) of the federal government funds on goods or services supplied by a DBE.

**C.      Count VII (Payment by Mistake) States a Claim for Relief.**

ASI argues that that the payment by mistake claim is unavailable because it is premised upon an unjust enrichment theory of recovery and such a claim can only be granted upon a showing that no adequate remedy at law exists.

First, even if the unjust enrichment claim is dismissed, the payment by mistake claim is still available because "where the disbursement of public funds is concerned, the government is not under the obligation of showing either that the recipient was unjustly enriched or that the balance of equities otherwise lies in its favor." *Mt. Vernon Co-op. Bank v. Gleason*, 367 F.2d 289, 291 (1st Cir. 1966).

Second, this claim is still available despite the assertion of other remedies at law. See, e.g., *Klaczak v. Consol. Med. Transp., Inc.*, No. 96 C 6502, 2002 WL 31010850, at *5 (N.D. Ill. Sept. 9, 2002) (holding that in a FCA case, even though the "United States Amended Complaint alleges multiple, alternative causes of action, including payment by mistake of fact and unjust

enrichment. . . [Fed. R. Civ. P.] Rule 8(e)(2) explicitly provides that a party may state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds"); *S. v. G & H Mach.*, 92 F.R.D. 465, 467 (S.D. Ill. 1981) (holding that "[u]nder the Federal Rules of Civil Procedure, plaintiff is entitled to plead alternative legal grounds for recovery . . . and 'flexible pleading [is] essential to a full presentation of all relevant facts and legal theories at trial and final settlement of disputes on their merits'").

Because all common law claims in the Complaint state claims upon which relief can be granted, the defendant's Renewed Motion to Dismiss should be denied.

**IV. In Any Event, Dismissal with Prejudice is Not Appropriate**

ASI asks the Court to dismiss the FAC in its entirety with prejudice. Doc 77, p 24. As set out above, the FAC adequately pleads its remaining claims against ASI. However, to the extent the Court may find one or more of the claims to be insufficiently pled, dismissal with prejudice is not the appropriate remedy. *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (U.S. 1976), citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (U.S. 1957) ("In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. Va. 1978).

Notably, although the FAC is now the operative pleading, Relators did not draft or file the FAC; as ASI's recounting of the procedural history of this case indicates, the Government intervened, filed the FAC, and then withdrew. Doc 77, p 3. In the event the Court agrees with

ASI that the FAC has pleading flaws, Relators request, and should be granted, the opportunity to amend the Complaint that they inherited from the Government.

**BICK & KISTNER, P.C.**

By: /s/ Elkin L. Kistner
    Elkin L. Kistner (*pro hac vice*)   #802448
    101 South Hanley Rd., Suite 1280
    St. Louis, MO 63105
    Telephone:  (314) 571-6823
    Facsimile:  (314) 727-9071
    E-mail: elkinkis@bick-kistner.com
  *Attorney for Relators Joseph Hedley and Fred Rauch, III*

    Joseph V. Neil (*pro hac vice*) #802445
    5201 Hampton Avenue
    St. Louis, MO  63109
    Telephone: (314) 353-1001
    Facsimile: (314) 353-0181
    E-mail: neill5300@aol.com
    *Co-Counsel for Relators*

    Gerard P. Martin  #00691
    Rosenberg, Martin Greenberg, LLP
    25 S. Charles Street, Ste 2115
    Baltimore, MD 21201
    Telephone: (410) 727-6600
    Facsimile: (410) 727-1115
    E-mail: gmartin@rosenbergmartin.com
    *Co-Counsel for Relators*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of October, 2014, a true and correct copy of the foregoing document was served upon the following via operation of the Court's electronic filing system:

James Lloyd Volling
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
james.volling@faegrebd.com

Jason Burke
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4400
Chicago, Illinois 60657
jason.burke@FaegreBD.com

Ava E. Lias-Booker
McGUIRE WOODS LLP
7 St. Paul Street, Suite 1000
Baltimore, MD 21202-1671
alias-booker@mcguirewoods.com


   /s/ Elkin L. Kistner