IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JOSEPH HEDLEY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-2935 |
| ABHE & SVOBODA, INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Joseph M. Hedley and Fred A. Rauch, III ("Plaintiffs"),[1] bring this False Claims Act[2] action against Defendant ABHE & Svoboda, Inc. ("Defendant" or "ASI") alleging that ASI orchestrated a fraudulent scheme whereby it falsely represented the use of a Disadvantaged Business Enterprise ("DBE") subcontractor in order to receive payments under a government contract. As relators, Plaintiffs initially filed this action in the United States District Court for the Southern District of Illinois. *See* Compl., ECF No. 2. After the United States elected to intervene (ECF No. 18), it filed the First Amended Complaint (ECF No. 19), alleging violations of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, and various state law claims. ASI

---

[1] The United States of America, on behalf of the Department of Transportation, was the original plaintiff in this action, but withdrew its intervention on January 21, 2014. *See* Order, ECF No. 52. When the United States was a party, Plaintiffs Hedley and Rauch were captioned as "Relators." *See* First Amend. Compl., ECF No. 19.

[2] 31 U.S.C. §§ 3729, *et seq.*

subsequently moved to dismiss the First Amended Complaint, or in the alternative, transfer the case to the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1404(a). *See* Mot. to Dismiss, ECF No. 33; Mem. in Supp. of Mot. to Dismiss, ECF No. 34. While ASI's motion was pending, the United States moved to withdraw its intervention, and the district court granted the withdrawal. *See* Mot. to Withdraw Intervention, ECF No. 50; Order, ECF No. 52. Plaintiffs chose to continue to pursue the subject action after the Government's withdrawal. The district court held a hearing on ASI's Motion to Dismiss on July 7, 2014 (ECF No. 62). That court dismissed with prejudice the unjust enrichment claim (Count VI), and transferred the action to this Court pursuant to 28 U.S.C. § 1404(a). *See* Minute Entry, ECF No. 62; Order, ECF No. 63.

Currently pending is Defendant ASI's Renewed Motion to Dismiss (ECF No. 76). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant ASI's Motion to Dismiss (ECF No. 76) is GRANTED and this case shall be DISMISSED WITHOUT PREJUDICE as to Counts I-III and WITH PREJUDICE as to Counts IV, V, and VII.

BACKGROUND

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The present action arises from a contract between Defendant ASI and the Maryland State Highway Administration

2

("MSHA") for the cleaning and repainting of the Severn River Bridge[3] (the

"Contract"). First Amend. Compl. ¶¶ 17-18. Plaintiffs Joseph Hedley and Fred Rauch

were, at all times relevant to this action, officers of Brighton Painting Company

("Brighton"), a participant in the alleged scheme. On April 25, 2006, MSHA invited

the submission of bids to clean and repaint the Severn River Bridge. *Id.* ¶ 18. ASI then

submitted a bid proposal to MSHA stating that it intended to achieve MSHA's

required fifteen percent DBE[4] participation goal by employing Northeast Work and

Safety Boats, LLC ("NWSB"), a certified Women-Owned Business Enterprise

("WBE"), as a subcontractor. *Id.* ¶¶ 19, 22. On the basis of ASI's representation in its

proposal, MSHA awarded the Contract to ASI on July 21, 2006. *Id.* ¶ 20.

The Contract, pursuant to the DBE participation goal, required ASI to utilize at

least fifteen percent of the federal government dollars on goods and services performed

by a DBE. *Id.* ¶ 21. Instead of complying with this DBE participation requirement,

ASI allegedly represented that NWSB performed certain work that was actually

performed by Brighton. *Id.* ¶¶ 22-23. *Id.* ¶ 7. They claim that, under the alleged

[3] The Severn River Bridge is officially named the "Pearl Harbor Memorial Bridge." *Id.* ¶ 17.
[4] As explained in the First Amended Complaint, the Disadvantage Business Enterprise regulations require states to "determine appropriate levels of [DBE] participation to help correct lingering discrimination and its effects" through race- and/or gender-neutral means and, if necessary, race-and/or gender-conscious means. First Amend. Compl. ¶ 12 (citing 49 C.F.R. 26). Under these regulations, a state, such as Maryland in this action, must institute DBE participation goals for contracts funded by the Department of Transportation, or other federal agencies. First Amend. Compl. ¶ 13. To count towards the DBE participation goal in a contract, the DBE must perform a "commercially useful function on the contract." *Id.* ¶ 15 (citing 49 C.F.R. 26.55). If the DBE's participation is illusory, in that it is a party to the contract purely to obtain the appearance of satisfying the participation goal, then the DBE is not performing a "commercially useful function." First. Amend. Compl. ¶ 16 (citing 49 C.F.R. 26.55).

scheme, ASI paid NWSB eight percent of the government funds ASI received under the Contract, even though NWSB did not perform any "commercially useful function" as mandated by the DBE participation goal. *Id.* ¶ 25.

In furtherance of the scheme, ASI allegedly submitted false employee payrolls of fictitious NWSB employees, detailing the compensation and benefits provided to NWSB employees under the Contract. *Id.* ¶ 26. These fictitious NWSB employees were, in reality, employees of Brighton. *Id.* ASI represented that NWSB certified the false employee records each week. *Id.* ¶ 27. ASI also allegedly negotiated for the purchase of materials and supplies that named NWSB as the party to be invoiced, when ASI actually paid for the goods. *Id.* ¶ 28. Finally, Plaintiffs claim that ASI knowingly submitted false quarterly DBE participation reports to MSHA, describing the DBE-related funds going to NWSB for multiple periods, as well as Contractor's Progress Estimates to MSHA, enabling ASI to receive progress payments under the Contract while perpetuating the fraudulent scheme. *Id.* ¶¶ 30-31. ASI completed its cleaning and repainting of the Severn River Bridge on July 17, 2008.[5] Def.'s Mot. to Dismiss Ex. B, ECF No. 77-2.

In the subject action, Plaintiffs assert six claims against ASI. Counts I-III arise

---

[5] Under Rule 12(d) of the Federal Rules of Civil Procedure, if "matters outside of the pleading are presented to and no excluded by the court," then "the motion must be treated as one for summary judgment under Rule 56." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). In the Fourth Circuit, however, a court may take judicial notice of matters of public record without transforming the motion to dismiss into a motion for summary judgment. *Id.* Defendant's exhibits accompanying its Motion to Dismiss are excerpts from the Contract, MSHA bid results, scheduling, and costs, all of which are matters of public record.

under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)-(3).[6] Counts IV-VII assert common

law claims of fraud, breach of contract, unjust enrichment,[7] and payment by mistake,

respectively. ASI moves to dismiss all counts pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

STANDARDS OF REVIEW

### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to

---

[6] This Court notes that the statutory citations of Counts I-III refer to the 1986 version of the False Claims Act. The Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 386, 123 Stat. 1617 (2009), amended certain sections of the False Claims Act, including the sections at issue in this case. Under the amendments of FERA, Count I, § 3729(a)(1), is found at § 3729(a)(1)(A), Count II, § 3729(a)(2), at § 3729(a)(1)(B), and Count III, § 3729(a)(3), at § 3729(a)(1)(C). FERA became law on May 20, 2009, and contains a retroactivity provision that states:

> The amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date.

FERA § 4(f), 123 Stat. 1625. Plaintiffs filed their Complaint on April 25, 2011 as relators, but the conduct complained of spans the time period April 25, 2006 through December 5, 2008. *See* Def.'s Mot. to Dismiss Ex. B (correspondence between ASI and MSHA in which ASI certified the dates of the project, hours worked, and other details). For purposes of the pending Motion to Dismiss, this Court need not determine whether the pre- or post-FERA versions of § 3729 apply. First, this Court can discern no material difference between the earlier or post-FERA versions of §§ 3729(a)(1)-(3) as the statute applies to *this* case. *See United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 764 n.17 (describing the differences between pre- and post-FERA versions of § 3729). Second, Plaintiffs do not allege any specific dates on which false claims were allegedly submitted by ASI, but the correspondence between ASI and MSHA on December 5, 2008 raises the possibility that false claims remained pending after June 7, 2008. *See supra* Def.'s Mot. to Dismiss Ex. B. Accordingly, this Court will not differentiate between the pre- and post-FERA versions of the False Claims Act.

[7] As previously noted, the United States District Court for the Southern District of Illinois dismissed the unjust enrichment claim (Count VI) with prejudice.

relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## B. Rule 9(b) of the Federal Rules of Civil Procedure

A false claim allegation is an averment of fraud. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) ("*Harrison I*"). A complaint alleging false claims thus must comply with the heightened standard of Federal Rule of Civil Procedure 9(b), which requires a pleader to "state with particularity circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[8] The United States

---

[8] Four justifications for Rule 9(b)'s heightened pleading standards are often invoked:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison I*, 176 F.3d at 784 (4th Cir. 1999); *see also Banca Cremi, S.A. v. Alex Brown & Sons, Inc.*, 132 F.3d 1017, 1036 n.25 (4th Cir. 1997).

Court of Appeals for the Fourth Circuit has held that "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" are the circumstances that must be pled with particularity. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison I*, 176 F.3d at 784). This set of information is often referred to as the "who, what, when, where, and how" of the alleged fraud. *Id.* at 379 (internal quotation marks omitted). Moreover, as to the "what" requirement, "a plaintiff must show a link between allegedly wrongful conduct and a claim for payment actually submitted to the government." *U.S. ex rel. Dugan v. ADT Security Services, Inc.*, No. DKC-03-3485, 2009 WL 3232080, at *14 (D. Md. Sept. 29, 2009) (citing *Clausen*, 290 F.3d at 1311). By requiring a plaintiff to plead circumstances of fraud with particularity and not by way of general allegations, Rule 9(b) screens "fraud actions in which all the facts are learned through discovery after the complaint is filed." *Harrison I*, 176 F.3d at 789 (citation omitted).

<u>ANALYSIS</u>

## A. The False Claims Act—Counts I and II

In pertinent part, the False Claims Act subjects to civil liability "[a]ny person who knowingly presents or causes to be presented, to . . . the United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1), as well as "[a]ny person who knowingly makes, uses, or causes to be made

or used, a false record or statement to get a false or fraudulent claim paid or approved

by the Government."[9] 31 U.S.C. § 3729(a)(2). To state a claim under the False Claims

Act, a plaintiff must plead "(1) that the defendant made a false statement or engaged in

a fraudulent course of conduct; (2) such statement or conduct was made or carried out

with the requisite scienter; (3) the statement or conduct was material; and (4) the

statement or conduct caused the government to pay out money or to forfeit money

due." *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 913 (4th

Cir. 2003) ("*Harrison II*").[10]

Given the "essentially punitive"[11] nature of the damages available in False

Claims Act cases, "[t]he Supreme Court has cautioned that the False Claims Act was

not designed to punish every type of fraud committed upon the government."

*Harrison I*, 176 F.3d at 785 (citing *United States v. McNinch*, 356 U.S. 595, 599 (1958)).

The Act "imposes liability not for defrauding the government generally; it instead only

prohibits a narrow species of fraudulent activity: 'present[ing], or caus[ing] to be

---

[9] The quoted language from the False Claims Act corresponds to the pre-FERA version of the Act. As previously noted, this Court cannot discern any material difference between the two versions of the Act that would affect this litigation. The First Amended Complaint references the earlier version of the statute, thus this Court will cite that version for ease of reference.

[10] Although this action was originally filed in the United States District Court for the Southern District of Illinois, it was transferred to this Court pursuant to 28 U.S.C. § 1404(a). When questions of federal law are presented, the "law of the circuit where the transferee court sits governs[.]" *In re Mutual Funds Inv. Litigation*, 767 F. Supp. 2d 542, 545 (D. Md. 2011). The law of the United States Court of Appeals for the Fourth Circuit thus controls in this case.

[11] *Vermont Agency of Nat. Res. v. Stevens*, 529 U.S. 765, 784 (2000) ("[T]he current version of the FCA imposes damages that are essentially punitive in nature . . . ."); *see also Texas Indus., Inc. v. Radcliffe Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 734 (10th Cir. 2006) (Hartz, J., concurring) ("[T]he False Claims Act is a punitive statute . . . .").

presented . . . a false or fraudulent claim for payment or approval." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (citation omitted); *see also Harrison I*, 176 F.3d at 785 ("The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'") (citation omitted). "Therefore, a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government." *Harrison I*, 176 F.3d at 785. The alleged false claim or record must present an "objective falsehood" identified in the complaint. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

Moreover, the heightened pleading standard of Rule 9(b) requires that plaintiffs plead the elements of a False Claims Act claim with particularity. *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 370, 379 (4th Cir. 2010) (explaining that, as the False Claims Act is a "fraud prevention statute," the heightened pleading standard of Rule 9(b) applies). Specifically, a plaintiff must state the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" to survive a motion to dismiss. *Kellogg Brown & Root*, 525 F.3d at 379 (quoting *Harrison I*, 176 F.3d at 784). In the Fourth Circuit, Rule 9(b)'s heightened pleading "appl[ies] with particular force in the context of the [False Claims] Act, given the potential consequences flowing from allegations of fraud by companies who transact business

with the government." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013). Failure to comply with the heightened standard of Rule 9(b) necessitates the dismissal of the deficient claim under Rule 12(b)(6). *Harrison I*, 176 F.3d at 783 n.5.

In this case, the First Amended Complaint is deficient on several grounds. First, Plaintiffs fail to allege any false claims or records with the requisite specificity of Rule 9(b). Plaintiffs refer to several types of documents, such as employee payroll sheets, invoices, and monthly DBE progress estimates, but never explain how or why these documents are false. Plaintiffs assert that these documents "constitute[] . . . false claim[s]," but provide no facts to support such a conclusory statement. First Amend. Compl. ¶ 34. The False Claims Act requires an "objective falsehood," thereby preventing this Court from accepting Plaintiffs' proffered inference.

Even assuming that the alleged documents are indeed false, Plaintiffs do not connect the documents to any claims for payment made by ASI to the government. The False Claims Act, after all, "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the '*claim for payment.*'" *Harrison I*, 176 F.3d at 785 (emphasis added). Plaintiffs simply contend that Defendant "knowingly submitted false claims to MSHA for payment," but never identify the supposed false claims. First Amend. Compl. ¶ 33. The documents included in the First Amended Complaint are not "claims" within the ambit of the False Claims Act, as

Plaintiffs never allege that the payroll records, monthly progress reports, and other documents were "submitted to the federal government for reimbursement[.]" *Takeda*, 707 F.3d at 454; *see also* 31 U.S.C. § 3729(c) (defining a "claim" as a "request or demand . . . for money or property . . . that is presented to an officer, employee, or agent of the United States[.]"

The proffered documents may be records, but yet again Plaintiffs omit any specific details linking these records to a claim for payment.  Plaintiffs do not allege that the Contract required ASI to certify, through the submission of payroll records, invoices, and other documents, its compliance with the DBE participation goal. As the plain language of the First Amended Complaint makes clear, the DBE participation goal was merely that—a goal, not a contractual prerequisite for payment. Under Plaintiffs' reasoning, any fraudulent assertion, no matter how unrelated to a claim for payment, would be cognizable under the False Claims Act. Yet, given the Act's punitive nature, it was "not designed to punish every type of fraud committed upon the government." *Harrison I*, 176 F.3d at 785 (citing *McNinch*, 356 U.S. at 599). Fraudulent activity unrelated to a claim for payment, as is alleged in the First Amended Complaint, does not fall within the prohibitions of the False Claims Act.

Plaintiffs' allegations of the requisite scienter are similarly deficient. Counts I and II require that the alleged perpetrator of the fraud "knowingly" submit the false claim or false record to the government for payment. 31 U.S.C. §§ 3729(a)(1)-(2). The

False Claims Act defines "knowingly" as actual knowledge, deliberate ignorance, or reckless disregard for the truth. 31 U.S.C. § 3729(b)(1). Although Rule 9(b) may allow knowledge to be plead "generally," the False Claims Act increases the specificity of that pleading by obliging Plaintiffs to plead the *identity* of those persons at ASI who submitted the false claims or records. *See Kellogg Brown & Root*, 525 F.3d at 379 (quoting *Harrison I*, 176 F.3d at 784). Far from including such details, the First Amended Complaint merely alleges that ASI "knowingly" submitted the fraudulent documents. In fact, the First Amended Complaint never identifies any officer or individual at ASI who possessed knowledge of the alleged scheme or false claims. This generalized allegation of knowledge, without more, is insufficient to state the requisite scienter of § 3729(a)(1) and § 3729(a)(2).

Third, Plaintiffs fail to allege with specificity that the allegedly false documents were material to the government's payment of a claim. Under the False Claims Act, the materiality of a false statement or conduct "turns on whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action.

*United States ex rel. Berge v. Bd. of Tr. of Univ. of Ala.*, 104 F.3d 1453, 1460 (4th Cir. 1997). Materiality does not look to whether the false statements actually influenced agency action, but rather whether the statements are "capable" of having such an influence. *Harrison II*, 352 F.3d at 916-17. Plaintiffs' allegations, however, do not

satisfy even this inclusive test. As previously noted, Plaintiffs provide no facts describing how allegedly false representations of DBE participation induced the government to pay a claim. On the face of the First Amended Complaint, DBE participation was merely a goal, not a prerequisite to payment. If the DBE participation goal is not a necessary element for payment, then stating that it has the "natural tendency" to influence government demands an analytical leap with no factual support in the pleadings. Absent any connection between the allegedly false statements and government action, Plaintiffs fail to plead the requisite materiality.

In sum, Plaintiffs' claims in Counts I and II rest on conclusory inferences that fall far short of the heightened pleading of the False Claims Act. The Act does not address every instance of fraudulent activity, but only that fraud involving the submission of specific false claims to the government. Accordingly, Counts I and II are DISMISSED WITHOUT PREJUDICE.

## B. The False Claims Act—Count III

The False Claims Act also imposes civil liability on those individuals who "conspire[] to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). While the Act does not define conspiracy, courts have concluded that general civil conspiracy principles apply. *See, e.g.*, *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 50 (D.D.C. 2011). To state a claim under § 3729(a)(3), a

plaintiff must allege that the defendant "conspired with one or more persons to have a fraudulent claim paid by the United States, . . . that one or more of the conspirators performed any act to have such a claim paid by the United States, and . . . that the United States suffered damages as a result of the claim." *Id.* (quoting *United States v. Bouchey*, 860 F. Supp. 890, 893 (D.D.C. 1994) (internal citations omitted)). Further, the plaintiff must plead that the alleged conspirators "had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008). A conspiracy claim is premised on the underlying False Claims Act claims, thus it "rises and falls with the individual claims." *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010).

Plaintiffs' conspiracy claim falters at the first element. As explained *supra* in Section A, Plaintiffs never identify any false claims with specificity. Plaintiffs claim that ASI and NWSB concocted an elaborate scheme to fulfill the DBE participation goal, but do not provide any facts indicating that the scheme included a conspiracy to submit false claims to the government. The First Amended Complaint establishes only a conspiracy to circumvent the DBE participation goal, and not a conspiracy within the scope of the False Claims Act. The conspiracy claim of Count III rests entirely on the allegations of Counts I and II. As a False Claims Act conspiracy claim "rises and falls with the individual claims," Count III must also fall with Counts I and II.

Plaintiffs' conspiracy claim thus fails to state a claim for which relief may be granted and is hereby DISMISSED WITHOUT PREJUDICE.

### C. Remaining Common Law Claims (Counts IV, V, VII)

Before considering the merits of Plaintiffs' common law claims (Counts IV, V, VII),[12] this Court must consider whether Plaintiffs have standing to pursue these claims. As a plaintiff's lack of standing divests the federal court of its jurisdiction to hear the offending claims, it is "not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A challenge to a party's standing is a facial challenge in which the allegations in the complaint are argued to be insufficient to establish subject matter jurisdiction. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (explaining that a dispute over subject matter jurisdiction may proceed as a facial or factual challenge) (citation omitted). With respect to a facial challenge, a court will dismiss a claim for lack of subject matter jurisdiction "where [that] claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).

As the United States Supreme Court explained in *Lujan*, standing consists of three elements: (1) a plaintiff "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (B) actual or

---

[12] Illinois law governs the merits of the common law claims. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). When a case is transferred from one federal court to another pursuant to 28 U.S.C. § 1404(a), the "transferee court must be obligated to apply the state law that would have been applied if there had been no change of venue." *Id.* This action was originally filed in the United States District Court for the Southern District of Illinois, thus Illinois law applies to the state common law claims.

imminent, not conjectural or hypothetical;" (2) a "causal connection between the injury and the conduct complained of;" and (3) it must "be likely, as opposed to merely speculative, that the injury" is redressable. 504 U.S. at 560-61 (internal quotations and citations omitted). The plaintiff, as the "party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Id.* at 561; *see also Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

Under the False Claims Act, a private citizen may bring a civil action for a violation of the Act on behalf of the United States, even where the government declines to intervene. 31 U.S.C. §§ 3730(b)(1), (4). This statutory framework essentially enables a relator to overcome the first element of standing—"injury in fact"—that is otherwise mandated by Article III. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 765-66 (2000). Yet, when a relator mounts a *qui tam* False Claims Act action, he overcomes the "injury in fact" requirement only for those claims arising under the Act. *See Kellogg Brown & Root*, 525 F.3d at 376 (explaining that only the government may bring a breach of contract claim in a False Claims Act action); *see also United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 14-15 (D.D.C. 2003) (holding that a "relator in a *qui tam* [False Claims Act] action does not have standing to assert common law claims based upon injury sustained by the United States").

In this case, Plaintiffs[13] lack standing to bring the common law claims of Counts V, V, and VII. The United States withdrew its intervention on January 21, 2014. The First Amended Complaint, however, pleads injuries suffered only by the United States, and not by Plaintiffs. They thus have failed to allege any facts demonstrating that they suffered an "injury in fact" within the meaning of Article III standing. In this *qui tam* False Claims Act action, Plaintiffs' lack of standing precludes this Court from exercising its jurisdiction over the remaining common law claims. Counts IV, V, and VII are DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant ASI's Motion to Dismiss (ECF No. 76) is GRANTED and this case shall be DISMISSED WITHOUT PREJUDICE as to Counts I-III and WITH PREJUDICE as to Counts IV, V, and VII.

A separate Order follows.

Dated: July 31, 2015                           /s/_____
                                               Richard D. Bennett
                                               United States District Judge

---

[13] As noted *supra*, Plaintiffs were formerly captioned as "Relators," but were re-captioned as "Plaintiffs" upon the withdrawal of the United States from this action.