IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JOSEPH M. HEDLEY and FRED A. RAUCH, III, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-14-2935 |
| ABHE & SVOBODA, INC., | * | |
| Defendant. | * | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## <u>MEMORANDUM OPINION</u>

This False Claims Act action was initially filed by Relators Joseph M. Hedley and

Fred A. Rauch, III ("Relators")[1] against Defendant ABHE & Svoboda, Inc. ("Defendant" or

"ASI") in the United States District Court for the Southern District of Illinois. At the time

of the initial filing, the Relators acted on behalf of the United States of America. The United

States was the original plaintiff in this action, but withdrew its intervention on January 21,

2014. *See* Order, ECF No. 52. Relators Hedley and Rauch allege that ASI orchestrated a

fraudulent scheme whereby it falsely represented the use of a Disadvantaged Business

Enterprise ("DBE") subcontractor in order to receive payments under a government

contract. Specifically, Relators allege violations of the False Claims Act, 31 U.S.C. §§ 3729, *et*

*seq.* (the "FCA").[2]

---

[1] Although this action previously named Hedley and Rauch as plaintiffs, the Clerk of the Court is now directed to re-caption this action as "United States of America, ex rel. Joseph M. Hedley and Fred A. Rauch, III."

[2] Relators originally asserted violations of the False Claims Act *and* various state law claims. *See* First Amended Compl., ECF No. 19.

After the United States District Court for the Southern District of Illinois transferred the action to this Court pursuant to 28 U.S.C. § 1404(a), ASI filed a Renewed Motion to Dismiss (ECF No. 76).[3] On July 31, 2015, this Court issued a Memorandum Opinion (ECF No. 84) and Order (ECF No. 85) granting ASI's Motion to Dismiss, dismissing Counts I-III without prejudice, and dismissing Counts IV, V, and VII with prejudice. Relators subsequently filed a Motion to Alter or Amend Judgment and for Leave to File Amended Complaint (ECF No. 87), which this Court granted in part and denied in part. *See* Mem. Order, ECF No. 92. Of relevance to the pending Motion, this Court found that Relators' Second Amended Complaint satisfied the "liberal rule" of Rule 15(a) of the Federal Rules of Civil Procedure. However, as this Court merely dismissed Relators' claims in its earlier ruling, no judgment existed that this Court could alter or amend under Rule 59(e) of the Federal Rules of Civil Procedure.

Presently pending is Defendant ASI's Motion to Dismiss Relators' Second Amended Complaint (ECF No. 97). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendant ASI's Motion to Dismiss Relators' Second Amended Complaint (ECF No. 97) is DENIED. In sum, the Second Amended Complaint sufficiently alleges, with the requisite specificity of Federal Rule of Civil Procedure 9(b), that ASI knowingly submitted false claims for payment to the government, in violation of the False Claims Act.

## BACKGROUND

---

[3] Prior to the transfer to this Court, ASI had filed a Motion to Dismiss (ECF No. 33). The district court held a hearing on ASI's Motion to Dismiss on July 7, 2014 (ECF No. 62). That court dismissed with prejudice the unjust enrichment claim (Count VI), and transferred the action to this Court. *See* Minute Entry, ECF No. 62; Order, ECF No. 63.

This Court accepts as true the facts alleged in a plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). The present action arises from a contract between Defendant ASI and the Maryland State Highway Administration ("MSHA") for the cleaning and repainting of the Severn River Bridge[4] (the "Contract"). *See* Second Amended Compl. ¶¶ 19-20, 44, ECF No. 93. Relators Joseph Hedley and Fred Rauch were, at all times relevant to this action, officers of Brighton Painting Company ("Brighton"), a participant in the alleged scheme.

On April 25, 2006, MSHA invited the submission of bids to clean and repaint the Severn River Bridge. *Id.* ¶ 20. As a recipient of Department of Transportation ("DOT") funding, MSHA was "require[d] . . . establish annual statewide [Disadvantaged Business Enterprise ("DBE")] participation goals[.]" *Id.* ¶¶ 11.[5] MSHA thus was obligated to "award the contract [for a project] only to a bidder or offeror who meets or makes good faith efforts to meet the [DBE] contract goal." *Id.* ¶ 13 (citing 49 C.F.R. 26.53). MSHA was then "required to implement appropriate mechanisms to ensure compliance with regulatory requirements by all program participants, including DBEs and prime contractors." *Id.* (citing 49 C.F.R. 26.37). To count towards the DBE participation goal in a contract, the DBE must perform a "commercially useful function on the contract." *Id.* ¶ 15 (citing 49 C.F.R. 26.55). Relators allege that "[f]ailure by a contractor to carry out the requirements of 49 CFR part 26," including the DBE conditions, "is a material breach of the contract." *Id.* ¶ 16 (citing 49 C.F.R. § 26.13(b)).

---

[4] The Severn River Bridge is officially named the "Pearl Harbor Memorial Bridge." *Id.* ¶ 19.
[5] As set forth in the Second Amended Complaint, the DBE program aims to help[] small businesses owned and controlled by socially and economically disadvantaged individuals, including minorities and women, to fairly compete for contracting opportunities created by DOT financial assistance programs." *Id.* ¶ 10.

The Severn River Bridge project stipulated that a prospective contract must include, *inter alia*, a "fifteen percent (15%) DBE . . . participation goal[,]" under which "the low bidder would be required to submit an acceptable Affirmative Action Plan ("AAP") within ten days." *Id.* ¶¶ 22-23. The proposal guidelines, however, warned that "[t]he Contract will not be awarded without the Bidder's AAP being approved by the [MSHA]." *Id.* ¶ 23. At a minimum, the "Contract . . . [must] include . . . a 'Schedule of Participation of DBE/MBE'[6] . . . and a 'DBE/MBE Disclosure and Participation Certificate[.]'" *Id.* ¶ 24.

ASI submitted a bid proposal to MSHA stating that it intended to achieve MSHA's required fifteen percent DBE participation goal by employing Northeast Work and Safety Boats, LLC ("NWSB"), a certified DBE contractor, as a subcontractor. *Id.* ¶¶ 27-28; *see also id.* ¶¶ 33-35 (ASI Schedule of Participation). Under this "fraudulent scheme," ASI agreed to pay NWSB eight percent of the funds ASI received as payment with the understanding that "NWSB would not actually perform any commercially useful function on the Project or under the Contract." *Id.* ¶ 28. ASI then contracted with Brighton to provide the services purportedly rendered by NWSB. *Id.* ¶ 31.

As the lowest bidder, ASI was ordered to submit its Affirmative Action Plan to detail the specifics of its intended compliance with the DBE provisions. *Id.* ¶¶ 36-37. ASI submitted the requested document, allegedly certifying that NWSB would "perform $1,569,200.00 worth of work as a subcontractor on the Contract, or 15.12% of the total Contract price." *Id.* ¶ 38. ASI's DBE/MBE Disclosure and Participation Certificate allegedly

---

[6] On the Schedule of Participation, MSHA expressly stated that "FAILURE TO COMPLETE THIS FORM MAY BE GROUNDS FOR THE BID TO BE DECLARED NON-RESPONSIVE." *Id.* ¶ 33 (emphasis in original).

reiterated ASI's intentions with respect to NWSB. *Id.* ¶ 40. Relators allege that both documents were false, as ASI knew both that Brighton, and not NWSB, would perform the work at issue under the Contract. *Id.* ¶¶ 42-43. Relators allege that, as payment under the Contract was supplied by federal funding from the DOT, MSHA could not obtain the DOT funds without ASI's bid proposal and related Affirmative Action Plan. *Id.* ¶ 45; *see also id.* ¶ 11. ASI's representations of DBE compliance thus allegedly caused federal funds to be paid, via MSHA. *Id.* ¶ 45.

On the basis of ASI's representations, MSHA awarded the Contract to ASI on July 21, 2006. *Id.* ¶ 44. ASI then commenced work on the Severn River Bridge. *Id.* ¶ 47. Under the DBE program, MSHA was tasked with ensuring ASI's compliance by close monitoring of its progress under the Contract and, if necessary, withholding progress payments or terminating the contract for non-compliance. *Id.* ¶¶ 48, 52-53. The prescribed monitoring included review of ASI's payroll records. *Id.* In furtherance of the alleged scheme, ASI allegedly submitted false employee payrolls of fictitious NWSB employees, detailing the compensation and benefits provided to NWSB employees under the Contract. *Id.* ¶¶ 54-55. These fictitious NWSB employees were, in reality, employees of Brighton. *Id.* ¶ 55. Relators allege that ASI knew the records were false. *Id.* ¶ 58. MSHA, on the basis of the false payroll records, represented to DOT that ASI had thus far satisfied the DBE requirements. *Id.* ¶ 59. This alleged certification thus caused the payment of federal funds to MSHA, which forwarded the funds to ASI. *Id.*

Relators also allege that ASI knowingly submitted false quarterly DBE participation reports to MSHA, describing the DBE-related funds going to NWSB for multiple periods.

*Id.* ¶¶ 62, 72. Like the submission of payroll records, the quarterly DBE participation reports were necessary to payment under the Contract. *Id.* ¶¶ 62-66. After ASI initially failed to submit the requisite reports, MSHA sent a series of letters demanding the reports and warning that ASI's non-compliance could result in the suspension of progress payments. *Id.* ¶¶ 66-71. ASI subsequently created false reports about the supposed NWSB employees working on the project. *Id.* ¶¶ 72, 74. The employees described, however, were employees of Brighton, and not NWSB. *Id.* ¶ 74. Once again, ASI knew the reports were false. *Id.* ¶ 74; *see also id.* ¶ 76 (detailing the submitted reports). MSHA approved the final payment to ASI "based on the DBE participation quarterly reports and their supporting documentation" on December 31, 2008. *Id.* ¶ 78.

Finally, Relators allege that ASI submitted twenty false Contractor's Progress Estimates to MSHA. *Id.* ¶¶ 80-81. Under the Contract, these reports were necessary to ASI's continued receipt of progress payments while perpetuating the fraudulent scheme. *Id.* The reports represented that ASI had paid NWSB for its purported work as subcontractor. *Id.* ¶ 88. As ASI had not made the stipulated payments to NWSB for the work described in the Contract, ASI knew that the reports were false. *Id.* ¶¶ 88-89. Believing that ASI had complied with the terms of the Contract, MSHA submitted claims for payment to the DOT. *Id.* ¶ 91. The requested federal funds were then paid to ASI. *Id.*

ASI completed its cleaning and repainting of the Severn River Bridge on July 17, 2008. *Id.* ¶ 92. To receive final payment under the Contract, ASI certified that it had complied with all terms including, *inter alia*, the use of the agreed-upon subcontractors. *Id.* ¶ 97. ASI's certification was premised on false statements, as ASI had not used the services of

NWSB. *Id.* ¶ 98.

In the subject action, Relators assert three claims against ASI under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)-(3).[7] After contesting Relators' submission of the Second Amended Complaint (ECF No. 88), ASI now moves to dismiss all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. to Dismiss Relators' Second Amended Compl., ECF No. 97.

<u>STANDARDS OF REVIEW</u>

**A.  Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The

---

[7] This Court notes that the statutory citations of Counts I-III refer to the 1986 version of the False Claims Act. The Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 386, 123 Stat. 1617 (2009), amended certain sections of the False Claims Act, including the sections at issue in this case. Under the amendments of FERA, Count I, § 3729(a)(1), is found at § 3729(a)(1)(A), Count II, § 3729(a)(2), at § 3729(a)(1)(B), and Count III, § 3729(a)(3), at § 3729(a)(1)(C). FERA became law on May 20, 2009, and contains a retroactivity provision that states:

> The amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date.

FERA § 4(f), 123 Stat. 1625. Relators filed their Complaint on April 25, 2011, but the conduct complained of spans the time period April 25, 2006 through December 5, 2008. *See generally* Second Amended Compl. For purposes of the pending Motion to Dismiss, this Court need not determine whether the pre- or post-FERA versions of § 3729 apply. First, this Court can discern no material difference between the earlier or post-FERA versions of §§ 3729(a)(1)-(3) as the statute applies to *this* case. *See United States ex rel. Bennett v. Medtronic, Inc.,* 747 F. Supp. 2d 745, 764 n.17 (S.D. Tex. 2010) (describing the differences between pre- and post-FERA versions of § 3729). Second, Relators allege that ASI submitted false claims after June 7, 2008. Second Amended Compl. ¶¶ 91-96. Accordingly, this Court will not differentiate between the pre- and post-FERA versions of the False Claims Act at this time.

purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 586 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility

standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## B. Rule 9(b) of the Federal Rules of Civil Procedure

A false claim allegation is an averment of fraud. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) ("*Harrison I*"). A complaint alleging false claims thus must comply with the heightened standard of Federal Rule of Civil Procedure 9(b), which requires a pleader to "state with particularity circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[8] The United States Court of Appeals for the Fourth Circuit has held that "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" are the circumstances that must be pled with particularity. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison I*, 176 F.3d at 784). This set of information is often referred to as the "who, what, when, where, and how" of the alleged fraud. *Id.* at 379 (internal quotation marks omitted). Moreover, as to the "what" requirement, "a plaintiff must show a link between allegedly wrongful conduct and a claim for payment actually submitted to the government." *U.S. ex rel. Dugan v. ADT Security Services, Inc.*, No.

---

[8] Four justifications for Rule 9(b)'s heightened pleading standards are often invoked:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison I*, 176 F.3d at 784 (4th Cir. 1999); *see also Banca Cremi, S.A. v. Alex Brown & Sons, Inc.*, 132 F.3d 1017, 1036 n.25 (4th Cir. 1997).

DKC-03-3485, 2009 WL 3232080, at *14 (D. Md. Sept. 29, 2009) (citing *Clausen*, 290 F.3d at 1311). By requiring a plaintiff to plead circumstances of fraud with particularity and not by way of general allegations, Rule 9(b) screens "fraud actions in which all the facts are learned through discovery after the complaint is filed." *Harrison I*, 176 F.3d at 789 (citation omitted).

<u>ANALYSIS</u>

### A. The False Claims Act—Counts I and II

In pertinent part, the False Claims Act subjects to civil liability "[a]ny person who knowingly presents or causes to be presented, to . . . the United States Government . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1), as well as "[a]ny person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."[9] 31 U.S.C. § 3729(a)(2). To state a claim under the False Claims Act, a plaintiff must plead "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due." *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.,* 352 F.3d 908, 913 (4th Cir. 2003) ("*Harrison II*").[10]

---

[9] The quoted language from the False Claims Act corresponds to the pre-FERA version of the Act. As previously noted, this Court cannot discern any material difference between the two versions of the Act that would affect this litigation. The Second Amended Complaint references the earlier version of the statute, thus this Court will cite that version for ease of reference.

[10] Although this action was originally filed in the United States District Court for the Southern District of Illinois, it was transferred to this Court pursuant to 28 U.S.C. § 1404(a). When questions of federal law are presented, the "law of the circuit where the transferee court sits governs[.]" *In re Mutual Funds Inv. Litigation*, 767 F. Supp. 2d 542, 545 (D. Md. 2011). The law of the United States Court of Appeals for the Fourth Circuit thus controls in this case.

Given the "essentially punitive"[11] nature of the damages available in False Claims Act cases, "[t]he Supreme Court has cautioned that the False Claims Act was not designed to punish every type of fraud committed upon the government." *Harrison I*, 176 F.3d at 785 (citing *United States v. McNinch*, 356 U.S. 595, 599 (1958)). The Act "imposes liability not for defrauding the government generally; it instead only prohibits a narrow species of fraudulent activity: 'present[ing], or caus[ing] to be presented . . . a false or fraudulent claim for payment or approval." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (citation omitted); *see also Harrison I*, 176 F.3d at 785 ("The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment."") (citation omitted). "Therefore, a central question in False Claims Act cases is whether the defendant ever presented a 'false or fraudulent claim' to the government." *Harrison I*, 176 F.3d at 785.

Moreover, the heightened pleading standard of Rule 9(b) requires that plaintiffs or relators plead the elements of a False Claims Act claim with particularity. *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 370, 379 (4th Cir. 2010) (explaining that, as the False Claims Act is a "fraud prevention statute," the heightened pleading standard of Rule 9(b) applies). Specifically, a plaintiff must state the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" to survive a motion to dismiss. *Kellogg*

---

[11] *Vermont Agency of Nat. Res. v. Stevens*, 529 U.S. 765, 784 (2000) ("[T]he current version of the FCA imposes damages that are essentially punitive in nature . . . ."); *see also Texas Indus., Inc. v. Radcliffe Materials, Inc.*, 451 U.S. 630, 639 (1981) ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 734 (10th Cir. 2006) (Hartz, J., concurring) ("[T]he False Claims Act is a punitive statute . . . .").

*Brown & Root*, 525 F.3d at 379 (quoting *Harrison I*, 176 F.3d at 784). In the Fourth Circuit, Rule 9(b)'s heightened pleading "appl[ies] with particular force in the context of the [False Claims] Act, given the potential consequences flowing from allegations of fraud by companies who transact business with the government." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013). Failure to comply with the heightened standard of Rule 9(b) necessitates the dismissal of the deficient claim under Rule 12(b)(6). *Harrison I*, 176 F.3d at 783 n.5.

In contrast to the First Amended Complaint, the Second Amended Complaint sufficiently alleges that Defendant ASI violated the False Claims Act. As a preliminary matter, ASI does not dispute that Relators have sufficiently pled that ASI possessed the requisite scienter and that the government did, indeed, pay out sums of money. Rather, ASI argues that Relators fail to allege with the requisite particularity of Rule 9(b) that ASI made a false claim for payment to the government or that any alleged false statements was material to the government's payment of federal funds. Each argument will be addressed in turn.

1. *False Claims for Payment*

Relators identify five categories of allegedly false documents submitted by ASI to MSHA: (1) ASI's initial bid proposal; (2) payroll documents; (3) quarterly DBE participation reports; (4) contractor progress estimates; and (5) documents related to ASI's request for final payment. Relators explain that each document falsely detailed the use of NWSB, a certified DBE contractor, as subcontractor, when the services at issue were actually provided by Brighton. Relators identify the individuals at ASI who either produced the documents or reviewed the documents before submission. *See, e.g.*, Second Amended Compl. ¶¶ 72-76

(explaining how an ASI employee, Ryan Glen, created the false quarterly DBE participation reports at the direction of Gail Svoboda, the president of ASI).

Relators do not simply allege that the documents are false; rather, they claim that these false documents constituted "false claims" within the meaning of the False Claims Act. Although the False Claims Act certainly "was not designed to punish every type of fraud committed upon the government[,]" it *is* "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government . . . ." *Harrison I*, 176 F.3d at 785, 788 (internal citations omitted). Given this broad construction, the FCA "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money." *Id.* at 788 (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968)). In other words, "any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach." *Harrison I*, 176 F.3d at 788.

Relators allege that the specified documents constitute false claims under two theories. In the first, Relators allege that the documents substantiate ASI's repeated false certifications to MSHA that it had complied with the DBE participation requirements. The certifications were not merely suggested or in any way optional. Rather, Relators allege with particularity that MSHA required the submission of the documents as a condition of payment under the Contract. *See, e.g.*, Second Amended Compl. ¶¶ 48, 52, 62-67. After receiving the documents certifying DBE compliance, MSHA in turn submitted claims to DOT for the requisite funds to pay ASI. *See, e.g., id.* ¶¶ 59-60. The DOT allegedly requires participating states to award contracts only to contractors complying with the state DBE

goal. *Id.* ¶¶ 11, 13. Thus, through MSHA, ASI's false statements were clearly made in an effort to induce the government to pay out federal funds. *See United States v. Triple Canopy, Inc.*, 775 F.3d 628, 636 (4th Cir. 2015) (explaining that the defendant's certifications were "fraudulent attempts to cause the Government to pay sums of money").

Alternatively, Relators allege that ASI fraudulently secured the Contract by certifying in its bid proposal its intention to use NWSB to comply with MSHA's DBE participation goal. This "fraud-in-the-inducement" theory extends FCA liability to occasions in which "the contract or extension of a government benefit was obtained originally through false statements or fraudulent conduct." *Harrison I*, 176 F.3d at 787; *see also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 (1943) (finding FCA liability where the defendants obtained government contracts through "collusive bidding"). As the United States Supreme Court explained, the "initial fraud did not spend itself with the execution of the contract . . . The initial fraudulent action and every step thereafter taken, pressed ever to the ultimate goal— payment of government money to persons who had caused it to be defrauded." *Marcus*, 317 U.S. at 543-44. Here, ASI did not receive the Contract until after it had submitted DBE-related documents, such as its Affirmative Action Plan, to MSHA. Even if ASI's subsequent statements were not false, the initial false documents were integral to the success of its "ultimate goal—payment of government money to [ASI]."

In moving to dismiss, ASI essentially argues that Relators have failed to *prove* that MSHA submitted claims only after the submission of the false documents or that DOT's payment was somehow related to that submission. Yet, this argument applies far too high a burden on Relators at this stage in the proceedings. ASI correctly states that Rule 9(b)

applies a heightened pleading standard to FCA claims. This standard, however, remains a *pleading* standard, and not a burden of proof. Relators have sufficiently alleged that MSHA required the certification of DBE compliance prior to payment of the designated federal funds. ASI may dispute the degree to which the certification documents were "required," but such an argument is properly reserved for a later time.

   *2. Materiality*

   Under the False Claims Act, the materiality of a false statement or conduct "turns on whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action. *United States ex rel. Berge v. Bd. of Tr. of Univ. of Ala.*, 104 F.3d 1453, 1460 (4th Cir. 1997). Materiality does not look to whether the false statements actually influenced agency action, but rather whether the statements are "capable" of having such an influence. *Harrison II*, 352 F.3d at 916-17.

   The Second Amended Complaint alleges with specificity that ASI's continued certification of DBE compliance had the "natural tendency" to induce the government, through MSHA, to pay the designated federal funds. As discussed *supra*, the Affirmative Action Plan, in which ASI described its intent to use NWSB to satisfy the DBE requirement, was allegedly necessary to the selection of ASI as contractor. Second Amended Compl. ¶¶ 33, 45-46. The failure to adhere to this DBE requirement was, according to Relators, a material breach of the Contract. *Id.* ¶ 17. MSHA had the authority to, if necessary, withhold progress payments or terminate the contract for non-compliance. *Id.* ¶ 48. Indeed, MSHA explicitly warned of this possibility when ASI failed to submit the requisite quarterly DBE participation reports. *Id.* ¶¶ 66-71. Absent documented DBE compliance, Relators allege that

MSHA would not have submitted claims for payment to DOT on behalf of ASI. *See, e.g., id.* ¶¶ 59-60, 79, 90-91. As alleged by the Second Amended Complaint, ASI's repeated DBE certifications to MSHA, and thus, to DOT, had the "natural tendency" to cause the payment of federal funds.

Once again, ASI seeks to apply far too strenuous a burden than that contained in Rule 9(b). ASI essentially argues that Relators have not shown materiality by failing to prove that, absent the false statements, the government would not have paid the federal funds at issue. This argument is unpersuasive for several reasons, the first of which is the misinterpretation of Rule 9(b) as a standard of *proof*, and not merely a pleading standard. Second, ASI argues that MSHA's use of the term "may" rather than "shall," or another similarly imperative term, when threatening suspension of payment or termination for non-compliance, does not establish the requisite materiality. Yet, the False Claims Act commands only that the false statements be "capable" of influencing government action. *Harrison II*, 352 F.3d at 916-17. ASI, on the other hand, seems to demand that Relators show that the false statements actually *did* influence the payment of federal funds. ASI's dispute is with the degree of influence, and not whether the false statements were capable of influence. Finally, Relators allege not only that the false statements were capable of influencing agency action, but actually did so when ASI failed to submit the prescribed DBE participation reports. The Second Amended Complaint thus sufficiently alleges that the false statements were material to the payment of federal funds.

### B. The False Claims Act—Count III

The False Claims Act also imposes civil liability on those individuals who "conspire[] to defraud the government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). While the Act does not define conspiracy, courts have concluded that general civil conspiracy principles apply. *See, e.g.*, *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999); *United States v. Toyobo Co. Ltd.*, 811 F. Supp. 2d 37, 50 (D.D.C. 2011). To state a claim under § 3729(a)(3), a plaintiff must allege that the defendant "conspired with one or more persons to have a fraudulent claim paid by the United States, . . . that one or more of the conspirators performed any act to have such a claim paid by the United States, and . . . that the United States suffered damages as a result of the claim." *Id.* (quoting *United States v. Bouchey*, 860 F. Supp. 890, 893 (D.D.C. 1994) (internal citations omitted)). Further, the plaintiff must plead that the alleged conspirators "had the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008).

As a conspiracy claim is premised on the underlying False Claims Act claims, it "rises and falls with the individual claims." *United States ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 413 (4th Cir. 2010). In this case, Relators have sufficiently alleged the underlying False Claims Act violations, thus they have sufficiently alleged a related conspiracy.

## C. Damages

Finally, ASI argues that Relators failed to establish the "essential element" of damages. Mem. in Support of Def.'s Resp. in Opp'n, 12, ECF No. 97-1. Relators seek disgorgement of "all illegal profits" paid to ASI. Second Amended Compl. ¶ 1. ASI insists

17

that Relators must establish actual damages, defined as "the amount of money the government paid by reason of the false statement above what it would have paid absent the false statement," *Harrison II*, 352 F.3d at 922, to plead a claim under the FCA. As ASI was the lowest bidder, Relators have not, and cannot, according to Defendant, prove that the United States paid more than it would have absent the alleged fraud.

In this Circuit, however, the standard for pleading damages is hardly as well-established as Defendant contends. As a preliminary matter, a plaintiff or relator pleads a FCA claim by sufficiently alleging four elements: (1) "the defendant made a false statement . . . [;]" (2) that statement "was made . . . with the requisite scienter;" (3) materiality; and (4) "the statement or conduct caused the government to pay out money or to forfeit money due." *Harrison II*, 352 F.3d at 913. Absent from this list is any requirement that, at least at the pleading stage, the plaintiff or relator establish actual damages.

Moreover, the United States Court of Appeals for the Fourth Circuit has expressly acknowledged that "[w]e have not adopted one particular standard by which damages should be measured under the FCA." *Id.* at 922. In *Harrison II*, the Fourth Circuit chose to apply ASI's proposed standard "under the particular facts of [that] case." *Id.* at 923. Specifically, that standard was appropriate after "no evidence [was] adduced at trial suggesting that [the defendant] failed to perform the work that it was required to perform under the subcontract or that the government did not receive the benefit of the work performed." *Id.* The Fourth Circuit did not, contrary to ASI's contention, adopt this standard for all FCA claims seeking disgorgement for work performed under a contract. It was simply a standard adopted by "[s]ome courts[.]" *Id.* at 922 (citing *United States v. Ekelman & Assocs.*, 532 F.2d 545, 550 (6th

Cir. 1976)). The Fourth Circuit further acknowledged that "[o]ther factual scenarios could exist in which the contractor's performance so lacks any value as to make recovery of all monies paid by the government an appropriate remedy." *Id.* at 923 n.17 (citing *United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 428 (D.C. Cir. 2002)).

At the pleading stage, this Court declines to adopt a specific standard by which damages will be measured. ASI asks for proof of damages, but Relators need only *plead* damages to survive a motion to dismiss. Relators have fulfilled that obligation, alleging that the ASI's false statements deprived the government of the benefit of its bargain by circumventing a central goal of the DBE program—to support DBE businesses. Indeed, some courts have applied disgorgement as the appropriate remedy after a defendant's false statements robbed the government of an important intangible benefit. *See, e.g., United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458 (5th Cir. 2009). Only after discovery will Relators be required to prove damages, at which point the facts of the case will determine the appropriate standard of measurement. As such, Relators have sufficiently pled damages to survive the pending Motion.

CONCLUSION

For the reasons stated above, Defendant ASI's Motion to Dismiss Relators' Second Amended Complaint (ECF No. 97) is DENIED. In sum, the Second Amended Complaint sufficiently alleges, with the requisite specificity of Federal Rule of Civil Procedure 9(b), that ASI knowingly submitted false claims for payment to the government, in violation of the False Claims Act.

A separate Order follows.

19

Dated: July 29, 2016                    /s/

                                        Richard D. Bennett
                                        United States District Judge